P. M. M. ALEXANDER *et al. v.* JOSEPH A. KIMBRO.

1. CHANCERY—PARTNERSHIP—TENANTS IN COMMON—SALE FOR DISTRIBUTION.—Where K., in his life-time, sold to K. & K. an undivided two-thirds interest in certain lots of land in the town of Lexington, and on the same day entered into partnership with the said parties to conduct a livery stable in said town, and to run a steam saw-mill. *Held*: That this did not constitute said lots partnership property, unless there was some agreement that the lots should go into the partnership, as partnership property or stock, or unless the same was purchased with partnership funds. A mere agreement to use it for partnership purposes, or as partnership property, is not sufficient to convert it into partnership stock, in the absence of any evidence of such intention. The mere fact that property held by the firm as tenants in common, is used in and for the partnership business, or a mere agreement to use it for partnership purposes, is not of itself sufficient to convert it into partnership stock. There must be some evidence of further agreement to make it partnership property.

2. SAME—CASE IN JUDGMENT.—There was a partnership in the business of the stable and mill, but unless the intent of the tenants in common to throw their real estate into the fund as partnership stock is distinctly manifested, or unless the real property is bought with the social funds for partnership purposes, it must still retain its character of realty. The firm could acquire no interest in the property itself, unless it is by express agreement, in writing, or unless by purchasing with partnership funds, an implied trust is raised in its favor. To raise a trust by such purchase, it must have been made *at the time*, with partnership funds, or on partnership responsibility.

Appeal from the chancery court of Holmes county. Hon. J. J. Hooker, Chancellor.

The facts in the case fully appear in the opinion of the court.

*Robert S. Hudson*, for appellants :

" In reality, as between the parties themselves, there is no difference, whether the partnership property held for the purposes of the trade or business, consists of personal or movable property, or of real or immovable property, or of both, so far as their ultimate rights and interest therein are concerned." Story on Partship, p. 127, § 92 ; Watson on Partnership, ch. 2, pp. 72 to 77 ; Gow on Partnership, ch. 2, § 1, pp. 32 to 36, 3d ed.; Collyer on Partnership, 135.

" However the title may stand at law, or in whosesoever name or names it may be, the real estate belonging to the partnership, will, in equity, be treated as belonging to the partnership, like its personal funds, and disposable and distributable accordingly ; and the parties in whose names it stands, as owners of the legal title, will be held to be trustees of the partnership, and accountable accordingly to the partners, according to their several shares and rights, and interests in the partnership as *cestuis que trust*, or beneficiaries of the same." Story on Partnership, pp. 127, 128, § 92, ch. 6 ; 1 Story on Eq. Jur., § 674; Collyer on Partnership, B 2, ch. 1, § 1, pp. 82, 83, 2d ed.; Hoxie v. Carr, 1 Sumner Rep., 173 ; 3 vol. Kent Com., pp. 37 to 40, 4th ed., and authorities there cited.

" Indeed, so far as the partners are concerned, and their creditors, real estate belonging to the partnership is in equity treated as personalty, and governed by the general doctrines of the latter." Story on Partnership, ch. 6, p. 128, art. 93 ; Thornton v. Dixon, 3 Bro. Ch. Rep., 199 ; Balman v. Shove, 9 Ves., 501, 507, 508, 509; Ripley v. Waterworth, 7 Ves., 425; Cookson v. Cookson, 8 Sim. Rep., 529 ; Fereday v. Wrightwick, 1 Russ & Mylne R., 45 ; 3 Kent Com., pp. 37 to 40, 4th ed., and authorities cited.

"And so it will be deemed in equity to *all other intents and purposes*, if the partners themselves have stamped or impressed, by *agreement* or *otherwise*, upon it, purposely, the character of personalty." Story on Partnership, ch. 6, p. 128, § 93; Selkrigg v. Davies, 2 Dow. Parl. R., 231, 242; 1 Montague on Part., 97; 1 Mylne & Keen, 649; 3 Mylne & Keen, 443; 2 Younge & Coll, 139.

There is a lien of partners on partnership property, and it may be available to creditors, either before or after dissolution. Freeman v. Stewart, 41 Miss. R. 138.

"Besides, this community of interest in the capital stock, funds and effects of the partnership, each partner has certain rights, liens and privileges thereon. In the first place, no one partner has any right or share in the partnership property, except what remains thereof after the full discharge and payment of *all* debts and liabilities before any one of the partners, his representatives, or his individual creditors, can claim any right or title thereto, and therefore, each partner has a right to have the same applied to the due discharge and payment of all such debts and liabilities. In short, as between the partners themselves, the debts and liabilities of the firm to creditors and third persons are a fund, appropriated, in the first instance, to the discharge and payment of such debts and liabilities, and there is, properly speaking, as between them, a lien thereon, or at least an equity which may be worked out through the partners in favor of the creditors, although it may not directly attach in the creditors by virtue of their original claims, in all cases. Each partner also has a specific lien on the present and future property of the partnership, not only for the debts and liabilities due to third persons, but also for his own amount or share of capital stock and funds, and for all moneys *advanced* by him for the use of the firm—and also for all debts due to the firm for moneys abstracted by any other partner—from such stock and funds beyond his share, &c." Story on partn. ch. 6. p. 135, 136, sec. 97; Collyer on partn., B. 2, ch. 1, sec 1;

p. 77, 2d edition; West v. Skip, 2 ves. 142, ex parte, Ruffin, 6 ves. 119, 126; 1 Story Eq. per, sec. 674—41, Miss. Rep. 138.

It will be seen by the facts and proofs in this case, that the lot of land in controversy was partnership property, and so intended and impressed by the partners themselves and falls fully within the operation of the law here cited, and the decree was erroneous, and should be reversed, for the reason stated in the assignment of error.

Let us examine the facts disclosed by the exhibits and the evidence of B. F. Owen, showing clearly that this was intended and used as partnership property, and falls within the rule of personalty.

It is very clear that the Court below greatly erred in its decree. The facts show conclusively that the ground in question was partnership property, and purchased and used for that business; that appellee has not paid his part of the partnership debts and liabilities; that Joseph Kimbro, the deceased partner and father, greatly overpaid his share of the partnership debts, and out of his individual means; that the partnership assets are greatly insufficient to pay the partnership liabilities; all of which should, in equity, be fully settled before any partition by sale or otherwise be made for the benefit of any one member of the firm, for his individual account. The evidence in the case shows clearly the arrears and deficit of appellee, that this property is assets as between the partners, and should be so applied in adjustment of the partnership rights and liabilities. It is clear that appellee never paid anything for this property, but that it was conveyed in three undivided parts to Joseph Kimbro, the father, and his two sons, to divest the title of the old firms of Owen, Dement & Co., and Dement, Kimbro & Co.,    *    *    * in the same, and vest it in the Kimbro father and two sons, for the purpose and business of the partnership in the livery stable business, by the father and two sons, the articles of partnership requiring each to make his contribution in that partnership and the property and business thereof. This property was necessary for that business; real estate was in-

dispensable in the business of a livery stable. The whole affair was made and arranged with a view to that end, and the rights and interest of each in the land was put into the use and business of the firm in that capacity and so enjoyed, held and appropriated, improved and impressed.

*A. H. Handy*, on the same side.

*J. A. P. Campbell*, for appellee:

The question presented by the record is, whether the lots were partnership property?

The legal title was in J. C. G. Kimbro. It was conveyed by him, as to two-thirds interest, to Joseph Kimbro, the father, and J. A. Kimbro (appellee). The title then stood, one third in J. C. G. Kimbro, one-third in the father, and one-third in appellee. They were tenants in common. They agreed to form a partnership in the livery stable business and in buying and selling property. There *was no agreement that the several interests were to constitute part of the capital stock of the partnership*, and to be partnership property. The contrary appears, for it was part of the agreement that *all the real estate of the partnership*, should, for convenience, be held in the *name of J. C. G. Kimbro*. But the title to these lots was vested in the parties severally, and so remained. This negatives the idea that it was the intention of the parties that these lots should be partnership property. The plan seems to have been this: The father, a man of wealth, was desirous to engage the sons in business, and considered the livery stable and general trading business a suitable one, and to this end, procured the title to these lots to be vested severally in himself and two sons, as tenants in common. This was an advancement by the father to the sons. They were to carry on business as partners *on these lots as a place of business*, but it was not contemplated that *the lots themselves* were to constitute part of the stock in trade. Real estate and buildings suitable were necessary to the business. As an inducement to them to engage in the

business, on the terms fixed by the father, the sons were beforehand, severally made the owners, as tenants in common, by the father, of the two lots, and afterwards they were to engage in the business proposed, using as a place of business, these lots; but the several interests in the lots, were not to constitute any part of the joint property.

The mere agreement to use, for partnership purposes, individual property, and such use of it does not constitute it partnership property. Wheatly's Heirs v. Calhoun, 12 Leigh, 265, 273; Frank v. Branch, 16 Conn., 261; 1 American Lead. Cases, 495, and note; Collyer on Part., § 135, and note; Story on Part., Gray's Edition, p. 158, " B."

These lots were *not purchased with partnership means, nor credit.* Indeed, the title to the several interests was vested precedent to the partnership agreement, and, as an inducement to it, and the partnership agreement, does not stipulate for bringing these interests into common stock.

Where real estate is owned by individuals who compose a firm, and not shown to have been purchased with partnership funds, the intention of the parties to devote it to partnership purposes must be *clearly manifest*, otherwise it will not be held to be partnership property. See authorities above cited.

To decide that the lots in controversy were not partnership, but individual property, is to dispose of the whole question of an account between the parties, for it is only on the hypothesis of their being partnership property that an accounting can be claimed by defendants, in right of their ancestor, the elder Kimbro. One tenant in common has a right to charge another for improvements. Houston v. Dickinson, 2 Richardson, Eng. Rep., 317; Taylor v. Baldwin, 10 Barbour Report, 582, 626; Thompson v. Bostick, 1 McMullen, Eng. Rep., 75; ib., 67, 208; 4 Kent's Com., 389; Loving v. Bacon, 4 Mass. Rep., 575; Cheeseboro v. Green, 10 Conn. R., 318.

The fact that there was a partnership between appellee (complainant), and the ancestor of defendant, and that it was unsettled, is no reason why these lots should not be de-

creed to be sold, if they were individual property. A bill will lie by the personal representatives of the elder Kimbro against appellees for adjustment of partnership affairs, but this cannot be the subject of a cross bill in a suit to sell for division the individual property of the parties. Thus it is manifest that the only question evolved by the voluminous record is as I have stated, viz: Were the lots sought to be sold individual or partnership property? If they are part-partnership property, they are subject to an account; if individual property, they should be sold, and the proceeds divided according to the individual rights of the parties, and the representatives of the deceased Kimbro should be left to exhibit their original bill against appellee for an adjustment of partnership dealings.

It seems that the elder Kimbro had the exclusive possession of the lots and buildings, after the termination of the partnership business. This gave to *appellee* a right to call for *an account*, but it gave no right to the elder Kimbro or his representatives to call for one, or to object to the application of appellee to sell the lots for division, because he did not call for an account of the profits, exclusively received by the father, who was one of the tenants in common.

The advancement by the father to his son, the complainant, will be a subject for adjustment by "*hotchpot*," on final settlement among distributees.

The foregoing argument disposes of the first three assignments of error.

The only remaining assignment implies a just apprehension that the lots may not be held partnership property, and falls back on an assumed lien in favor of Joseph Kimbro, deceased, for the purchase money paid by him, for the lots procured by him to be conveyed to his son, the complainant below (appellee).

How did any lien arise? Not a vendor's lien, because that exists only in connection with a debt for the purchase money, and here there was no debt.

Not a resulting trust, because no trust results, as between

*father* and *son*, in case of purchase money paid by the father.

It is presumed to be an advancement, and in this case there is no evidence of a contrary intention.

The legal presumption must therefore prevail in this case, and the purchase by the father, in the name of the son, be considered as an advancement. Wilson v. Beauchamp, 44 Miss., 556; 2 Story's Eq. Jur., §§ 1202, 1203.

The rights of creditors are not involved.

PEYTON, C. J., delivered the opinion of the court:

Joseph A. Kimbro filed his bill in the chancery court of Holmes county, against the heirs of Joseph Kimbro and J. C. G. Kimbro, deceased, alleging that J. C. G. Kimbro, in his life-time, was seized and possessed of certain lots of land in the town of Lexington, in said county, as of his own estate in fee simple, and so seized and possessed, on the 7th day of January, 1854, for a valuable consideration, sold and conveyed to Joseph Kimbro and Joseph A. Kimbro, an undivided two-thirds of said real estate, consisting of lots numbered 28 and 29, in said town of Lexington; that these parties are tenants in common of said real estate, and that a sale will better promote the interest of all parties than a partition. The bill prays for a decree of sale of said property, and that the proceeds of the sale be distributed among all persons interested in the estate in proportion to their interests.

Upon a final hearing of the cause, the court decreed a sale of the property for the purpose aforesaid.

On behalf of the defendants in the court below, it was insisted that said lots were partnership property, and that there can be no division of such property until the accounts of the partnership have been taken, and the clear interest of each partner ascertained. And this presents the main question in the cause, the solution of which will very much depend upon the terms of the partnership of Joseph Kimbro, J. C. G. Kimbro and Joseph A. Kimbro, as evidenced by them,

in writing, in the words and figures following: "This agreement or indenture made the 7th day of January, A. D. 1854, between Joseph Kimbro and his two sons, John C. G. and Joseph A., for the purpose of forming a partnership, to take effect from the 26th of November last, for the purpose of conducting a livery stable, in the town of Lexington, and running a steam saw-mill, under the name of Kimbro & Sons. They are to be equal partners in furnishing capital, and severally to contribute to the advancement of the interest of the firm. And the said John C. G. and Joseph A. are to manage and conduct the business of the mill and stable free of any compensation or charge for their services, and the profit or losses are to be equally divided between the three parties. It is also agreed, by and between the parties, that any one member of the firm may use the money or credit of the firm for the purpose of trading, that is, buying land, negroes, or stock of any description, and all land purchased shall be deeded in the name of John C. G. Kimbro, for the purpose of readily conveying the same for the convenience and benefit of said firm."

Whether the appropriation of land to the uses of the partnership, without its being purchased with partnership funds, will operate to render it partnership property, will very much depend upon the intention of the parties and the evidence of that intention. It seems to be settled, that the mere fact that property held by the firm as tenants in common, is used in and for the partnership business, or a mere agreement to use it for partnership purposes, is not of itself sufficient to convert it into partnership stock. There must be some evidence of further agreement to make it partnership property. Frank v. Branch, 16 Conn., 261.

The American cases hold, generally, that real estate not purchased with partnership funds, does not become partnership property, though used for partnership purposes, unless there is some agreement that it shall be so considered. 1 Am. L. C., 5th ed., 605.

There was a partnership in the business of the stable and

mill, but unless the intent of the tenants in common to
throw their real estate into the fund as partnership stock, is
distinctly manifested, or unless the real property is bought
with the social funds, for the partnership purposes, it must
still retain its character of realty. It is believed that the
firm could acquire no interest in the property itself, unless
it is by express agreement, in writing, or unless by pur-
chasing with partnership funds, an implied trust is raised in
its favor. To raise a trust by such purchase, it must have
been made *at the time*, with partnership funds or on part-
nership responsibility. Wheatley's Heirs v. Calhoun, 12
Leigh, 272,

In the case under consideration, the real estate in contro-
versy was not purchased with common funds, nor was any
common capital withdrawn from the power of creditors to
make the purchase, nor was there any agreement that the
property thus owned in common should become partnership
stock, or constitute any part of the capital of the firm in the
business of the stable and the mill.

Entertaining this view of the law of the case, we think
the decree of the court below was right, and must, therefore,
be affirmed.