## Dunham, Appellant, v. Loverock.

*Tenants in common—Partnership—Dealings—Presumption—Oil lease.*

Tenants in common may become partners, like other persons, where they agree to assume that relation towards each other; but the law will not create the relation for them as the consequence of a course of conduct and dealing naturally referable to the relation already existing between them, which makes such a course of conduct to their common advantage.

An agreement between two tenants in common of an oil lease to drill an additional well on the leasehold at the common cost of the cotenants will not as between themselves create a partnership. In the absence of a distinct agreement between them that their relations to the property and to each other should be changed, the presumption is that the old relation continued, and that they treated with each other as owners of separate interests in an undivided lease.

Argued Oct. 5, 1893. Appeal, No. 177, Oct. T., 1893, by plaintiff, M. B. Dunham, from decree of C. P. Venango Co., April T., 1891, No. 3, dismissing bill in equity against defendants, William Loverock, W. H. Pickett and George H. Dunham. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

. Bill in equity for account, etc.

The bill averred that, in 1888, Emma F. Coutant made two leases for oil mining purposes for twenty years, reserving one eighth royalty, for, respectively, two acres to William Loverock, and eight acres to B. F. Shamburg, the same being situate in Oil Creek township, Venango county.   Also that the undivided half of the eight acre lease soon after vested in William Loverock, and the whole of said two leases became vested in W. P. Black and William Loverock, each one half, and after Jan. 16, 1889, the leaseholds, with the oil wells, machinery and material were owned by M. B. Dunham and Geo. H. Dunham one half, and William Loverock one half, by whom operations were carried on until Oct. 18, 1889, by sinking wells for producing oil, under the agreement that each should pay his proportion of expenses and losses, if any, and share in like proportion the receipts and profits.   Geo. H. Dunham was in active management of the property, purchasing supplies and selling the product. That M. B. Dunham expended for the carrying on of the business a large amount of money and in excess of his proportion ; that no settlement had been reached, and that there would be owing to the plaintiff about $1,361.60, after giving Loverock credit for his payments.   That on Oct. 18, 1889, Loverock sold his interest in the copartnership property aforesaid to W. H. Pickett, who had notice of Loverock's indebtedness, and in equity bought subject to the same and to a settlement of accounts between Loverock and Dunham.

The bill prayed: (1) For answer by each defendant.   (2) For an account of all partnership transactions growing out of the business carried on by the plaintiff and defendant.   (3) For a decree that Loverock pay the amount found due by him on the accounting, and that that sum be decreed to be a lien upon the interest of Loverock in the property sold to Pickett, and that that interest be sold to satisfy the charge if necessary.

Loverock and Pickett filed answers denying their liability.

The case was referred to Thomas McGough, Esq., as master, who recommended a decree in accordance with the prayers of the bill.

Exceptions to the master's report were sustained, the court filing the following opinion :

" As it is conceded by all the parties in interest that a single question is raised by the exceptions, it is unnecessary to recite

the manner or the time of the acquiring of the different interests, further than the master has found that from Jan. 16, 1889, up to Oct. 18, 1889, the leaseholds, oil wells and machinery were owned as follows : M. B. Dunham and Geo. H. Dunham one half, and William Loverock one half.  On Oct. 18, 1889, Loverock sold his one half interest to W. H. Pickett, one of the defendants.  For more than a year Dunham and Pickett operated the leases as they had been operated by Dunham and Loverock.  Dunham furnished the power and rendered monthly statements of the expense, which was paid by Pickett and [no claim being made upon Pickett for any alleged balance due by Loverock until Jan. 9, 1891.] [1]  That Loverock had not paid his share of the expenses in full at the time of his sale to Pickett is not controverted, and the plaintiff claims in this action to compel Pickett to account for, and pay the balance due by Loverock, and that it be made a lien against his interest in the leaseholds, machinery, etc.

" It is conceded by all that if Loverock and Dunham were partners such charge could be made.  If not partners, Pickett would not be liable to pay Loverock's indebtedness.  The master found they were partners and recommended that Pickett be charged with this balance, to which finding and recommendation the counsel for plaintiff excepts.

" It would be an affectation of examination and research to allude in detail to the many authorities cited upon either side claimed to be and seeming to rule the only question to be decided in their favor, viz.: Whether a partnership existed.  All the authorities agree that so far as the rights and duties of each to the other go to create a copartnership, they must be founded upon intention and agreement, which, in the absence of a writing, must be gathered, if at all, from the acts and declarations of the parties.  In this case the declarations relied upon would not warrant a decree against Pickett.  Turning then to the acts of the parties.  The uncontradicted evidence clearly shows : [They had no firm name.  There was no bringing of either the returns or the money into a common stock.] [2]  The product, to wit, the oil, was run into the pipe line and credited to the separate account of each.  [The debts were contracted by each separately and were individually paid by the party who had contracted them.] [3]  There was no division of profits ; there was a division of production.

" ' Co-ownership is not necessarily the result of an agreement. Partnership is.' 'No one can be made a partner, as between his alleged copartners, against his intention and will.' Lindley on Partnership, page 52, after giving the different incidents which make up partnerships and joint ownerships and clearly defining the line between them, on page 53, adds, 'if each owner does nothing more than take his share of the gross returns obtained by the use of the common property, partnership ·is not the result. On the other hand, if the owners convert these returns into money, and bring that money into a common stock, keeping out of it the expenses of obtaining the returns, and then divide the net profits, partnership is created.'

" In Walker v. Tupper et al., 152 Pa. 1, MITCHELL, Justice, says, inter alia: 'The division of the production in specie might not necessarily negative the idea of a partnership, but it would raise a presumption against it to overcome which an actual intent to become partners should clearly appear.' [There is no such claim and satisfactory evidence in this case, and in my opinion, this presumption, with the other uncontradicted facts before recited, all negativing the idea of the relation of a partnership existing between Dunham and Loverock, is fatal to a recovery against Pickett.] [4] The testimony of M. B. and Geo. H. Dunham, cited by the master, only shows an interest in the productions, not in the profits.

" The last case cited appears to be in every essential like the one under consideration and rules it. It is fair to the learned master to add that, at the time of the argument before him, this case had not been reported. The exceptions of Pickett are sustained."

Decree entered dismissing bill as to Pickett, but decree entered against Loverock for $1,361.60. Plaintiff appealed.

*Errors assigned* were (1–4) portions of opinion in brackets, quoting them; (5) entry of decree dismissing bill.·

*Roger Sherman, Samuel Grumbine* with him, for appellant, cited: Patterson v. Silliman, 28 Pa. 304; Brown .v. Beecher, 120 Pa. 590; Chamberlain v. Dow, 16 W. N. 532; Walker v. Tupper, 152 Pa. 1.

*George S. Criswell, J. W. Lee* with him, for appellee, cited:

Parsons on Part., c. 7, § 9; Hazard v. Hazard, 1 Story, 371; Lindley on Part., c. 1, § 1; Hedge & Horn's Ap., 63 Pa. 273; Gill v. Kuhn, 6 S. & R. 337; Walker v. Tupper, 152 Pa. 1.

OPINION BY MR. JUSTICE WILLIAMS, November 6, 1893:

The important facts in this case are few and free from controversy. The question presented is new and has considerable practical importance. For some time prior to the 16th January, 1889, William Loverock was the owner of an undivided one half part of a leasehold estate in about ten acres of land, and of the oil well, fixtures and machinery on said leasehold. At the date above mentioned M. B. Dunham purchased the other undivided one half part of the same leasehold and of the well and other property thereon from a former owner. At the time of his purchase the well was being operated for oil, and the oil produced was run into the pipe lines and credited to the several parties interested as follows: the royalty to Coutant, the lessor; one half of the residue to Loverock, and the other half to Black, who was Dunham's vendor. It is not denied that the relation existing between Dunham at the time of his purchase, and Loverock, was that of tenants in common. There was no unity of title between them, but there was unity of possession. The leasehold was being operated for the common benefit of its owners; and the production divided equally between them in the hands of the pipe line company that transported and stored the oil. Each took his own share of the oil, and paid his share of the current expenses of production. Dunham subsequently conveyed one half of his title to his son, who thus became a tenant in common with the other owners by virtue of the conveyance, and without regard to the wish or consent of Loverock. Some time after the Dunhams had acquired their interest in the leasehold, Loverock called on them to suggest that another well should be drilled on the land. He offered to put up a derrick for that purpose and pay his proportion of the cost of the well if the Dunhams would take charge of, and conduct the work on the ground. This was agreed to. He built the derrick. The Dunhams drilled the well, which proved to be productive. The oil therefrom was run into the same tank, taken into the same line, and there divided in the same manner as the oil from the first well. The

plaintiff now claims a balance to be due him from Loverock for his share of the cost of the well. Pickett having meantime purchased Loverock's half of the property, the plaintiff alleges that the cotenants were partners, and that Pickett took subject to a settlement of the accounts between his vendor and the firm. No contract of partnership written or oral is shown, but it is contended that a partnership resulted from the agreement to drill another well on the leasehold at the common cost of the owners. It must be remembered that this question is not raised between third persons and the tenants in common, but inter sese. What other persons may have thought, or in what manner they may have charged goods furnished for the work on the well, is not now the question; but what was the actual fact as between themselves? When the new well was proposed they were simply tenants in common of the ten acres covered by the lease, and of the well and machinery thereon. As such they contributed to the cost of operating the well and divided the product. The new well was on the same lease. It was to the interest of each of the cotenants that it should be put down, and it was an undertaking which was appropriate to tenants in common, since it would increase the product of the common property. In the absence of a distinct agreement between them that their relations to the property and to each other should be changed, the presumption is that the old relation continued and that they treated with each other as owners of separate interests in an undivided lease.

It is elementary law that a partnership is created only by a contract express or implied. The burden of showing its existence is on him who alleges it, and this burden the court below rightly held had not been lifted by the plaintiff. To be sure there was undivided possession of the lease, but unity of possession is one of the distinguishing characteristics of a tenancy in common. There was contribution to the cost of operating the well or wells, but this could be compelled between tenants in common by bill or by account render. There was division of the product, but this was in accordance with the rights of the cotenants. Each had a right to share in the product in proportion to his interest in the estate. It may be said that there was a resulting division of profits, since, if the product exceeded the cost of production, there was a profit to each part owner; but

if so it was shown by the settlement of his individual accounts only, and grew out of the fact that he received from his share of the product more than it cost him to secure it. So it may be said there was a contribution to losses, since each tenant sustained a loss when the value of his share of the product fell below its cost to him, but this was the individual loss of each, with which no one else had any concern, and to which no one was bound to contribute. There is, therefore, no circumstance relating to the business done upon, or the development of, the lease not fairly and naturally referable to the relations the parties sustained to each other as tenants in common. There is no agreement shown that tenants in common might not properly make with each other for the development of the property in which each held a separate title, but an undivided possession. Between persons so situated a partnership does not result by implication of law. It must be created by an agreement. As we fully agree with the court below that no such agreement is shown, it is not necessary to consider the authorities cited by the learned master, and by counsel in their printed briefs, showing what are the ordinary indicia of a partnership. There can be no controversy over such questions in this case, for the plaintiff fails for want of proofs sufficient to furnish a foothold for him on the facts. Tenants in common may become partners, like other persons, where they agree to assume that relation towards each other; but the law will not create the relation for them as the consequence of a course of conduct and dealing naturally referable to a relation already existing between them, which made such a course of conduct to their common advantage. The plaintiff and defendants upon the facts before us were tenants in common.

The decree appealed from gave to the plaintiff all the relief to which he is entitled in this case, and it is now affirmed.