HOLTON et al. v. GUINN.

(Circuit Court, W. D. Missouri, W. D. September 28, 1896.)

No. 1,964.

1. PARTNERSHIP BETWEEN TENANTS IN COMMON—EVIDENCE.
One L., having purchased an option on land, induced defendant to furnish the purchase money and take the deed,—their agreement reciting that defendant owned the land; that L. should prospect the land for ores; that expenses, losses, and profits arising from the working of the land should be divided; and that L. should have the right to purchase of defendant any interest in the land, by paying the proportionate part of the price paid by defendant, he to receive a deed for a one-half interest in case he paid half the price of the land, or in case the proceeds from working the land equaled such price. Held, that there was no partnership in the land.

2. SAME.
Acts of tenants in common will be referred to that relation, when possible, rather than to an alleged partnership.

3. SAME.
An habendum clause in a deed of a half interest by the owner of the whole interest, reading, "To have and hold the same * * * so that neither the said parties of the first part, nor their heirs, nor any person or persons for .

them or in their name or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises or any part thereof, but they and every one of them shall by these presents be excluded and forever barred," is inconsistent with the idea of a partnership between grantor and grantee.

4. SAME.

The fact that tenants in common of land conducted mining operations thereon, leased part of it for such purpose, cultivating part of it as farm lands, and that one of them listed it for taxation in the name of the two, and paid taxes thereon, and made concessions for railroad rights of way thereover, does not necessarily show partnership between them.

5. SAME.

A partnership may exist between tenants in common of land, in conducting business thereon, without affecting the legal status of the land.

6. ABATEMENT OF SUIT—ANOTHER ACTION PENDING.

The pendency of administration proceedings in the state probate court does not bar proceedings in the federal courts involving the same issues.

Everett W. Pattison and G. & A. E. Spencer, for complainant.

Thomas & Hackney and Karnes, Holmes & Krauthoff, for defendants.

PHILIPS, District Judge. This cause is submitted on the proofs and the briefs of counsel. The important question to be decided is, were Lloyd and Guinn co-partners in business; and, if so, did the land in question belong to the parties as partners, so that on the death of Lloyd the right of possession thereto devolved upon Guinn, as surviving partner, for the purpose of winding up and administering the partnership estate? Real estate may, the same as personalty, become the subject of partnership. It is wholly a matter of intention and agreement among the owners of the land. It may be created by parol agreement. But, because of the importance and dignity which the law attaches to landed property, the evidence which will transmute the deeded title into an equitable estate, as a mere asset, for the benefit of parties not named in the grant, is justly required by the courts to be most persuasive and absolute. The origin of the business relation between Lloyd and Guinn is important. Lloyd conceived the idea of the acquisition of this land, as he thought it contained lead and zinc ore; and he made an option contract with the owner of the land for its purchase, paying thereon $100, with the stipulation that if he paid the residue (between $5,000 and $6,000) within a given time the $100 should be credited as a part of the purchase money, but if he failed to make such payment then the $100 should be forfeited to the vendor. Being without the means to consummate the purchase, he induced the defendant, Guinn, who possessed ample means, to furnish the purchase money, and take the deed therefor to himself. Thereafter the following written contract was made between Lloyd and Guinn:

"Whereas, J. C. Guinn, of the county of Jasper and state of Missouri, is the owner of the following described real estate, situate in said county and state, to wit: The west half of the northwest quarter, and the west half of the southwest quarter, of section thirteen (13), and the east half of section fourteen (14), in township twenty-seven (27), of range thirty-three (33), the said Guinn having paid therefor the sum of six thousand dollars: Now, this

writing witnesseth: That the said J. C. Guinn and Elijah Lloyd, of said coun-
ty and state, have agreed and contracted with and between each other as
follows: 1st. That the said land above described shall be examined and pros-
pected for minerals and lead ore, especially the latter, and, if any of the val-
uable minerals and ores are found in and upon said land in paying quantities,
the same shall be mined, and the product thereof marketed, and that the said
Lloyd shall proceed without unreasonable delay to prospect said land, and
give his personal attention to the same.   2nd. That each of the parties hereto
shall share equally in all expenses, losses, and profits growing out of, and at-
tendant upon, the business contemplated by this agreement. 3rd. That the
said Lloyd shall have the right to purchase of the said Guinn the one-half in-
terest, or any proportionate part of one-half interest, of said land, during the
continuance of this contract, by paying therefor the portion of the sum of said
purchase price which shall be equal to the portion of the interest in said land
purchased by the said Lloyd; the sum to be paid by the said Lloyd to draw
interest at the rate of ten per cent. per annum from the date of the purchase
of the said land by the said Guinn until the same shall be paid by the said
Lloyd. 4th. That, if part of said land shall be sold for an amount equal
to the said sum of six thousand dollars, then the said Lloyd shall be deemed
to own an undivided half interest in the balance of said land, and entitled to
a deed of conveyance therefor, conveying such title as the said Guinn now
has to said land. 5th. That whenever the profits arising from mining opera-
tions, or the sale of a part of said land, as contemplated by this agreement,
shall have amounted to the sum of six thousand dollars, and the said Guinn
shall have received the same, together with ten per cent. interest thereon from
the date of the purchase of said land by the said Guinn until he receives the
same, then the said Lloyd shall own an undivided half interest in all the land
remaining unsold, and have and receive from the said Guinn a deed of con-
veyance conveying to the said Lloyd such undivided half interest, and such
title thereto as the said Guinn now has. 6th. That each of the said parties
to this agreement respectively binds himself, his heirs, executors, and admin-
istrators, to a due and faithful performance of the terms, conditions, and
stipulations of this contract, and that neither one of said parties shall assign
or transfer his interest herein without the written consent of the other party
indorsed hereon or attached hereto.

"In witness whereof, we have hereunto subscribed our names this 26th
day of March, 1874.                                    John C. Guinn.
                                               "Elijah Lloyd."

The plain purport of all which is that Guinn was willing to risk
his money in the land, and trust to the skill and labor of Lloyd in
developing and operating the property in the interest of both, where-
by Guinn was to get back all the purchase money, with 10 per
cent. interest thereon, and then own an undivided one-half of the
land.   All that Lloyd did was under and in execution of this con-
tract, up to May 28, 1883, when, on settlement between the parties,
it was ascertained that the usufruct of the land had yielded suffi-
cient to repay to Guinn the whole of the original purchase money,
with 10 per cent. interest thereon, which amount was then paid
over to him by Lloyd, and Guinn executed to Lloyd the required
deed for an undivided one-half interest in the land.   There is no
pretense that the written contract between Lloyd and Guinn, dur-
ing its life, was altered or varied by agreement of the parties or
otherwise.   I fail to find in the testimony submitted that any of
the acts done by Lloyd prior to the 28th day of May, 1883, were
not reasonably referable to the spirit of the terms of the written
contract.   Predicated of this contract, certainly there can be no
claim sustained that prior to the 28th day of May, 1883, there was,
inter sese, a partnership in the real estate, even if it can be main-

tained that a partnership existed at all between Lloyd and Guinn. The contract itself interdicts the idea of an intended co-partnership in the land. While Lloyd paid $100 to bind the option contract, there is no ground for claiming that he advanced so much on account of the joint interests of himself and Guinn; for at that time Guinn was not known, or even thought of, in the deal. And, when the parties came to the written agreement, Lloyd seems not to have asked that this $100 be considered, but, in effect, consented that the title to the land should be vested in Guinn, and that he (Lloyd) should not have or assert any share therein, except on the sole condition that he should pay to Guinn $6,000, with 10 per cent. interest thereon up to the time of payment. The right of sale of any part of said land was reserved to Guinn by the fourth paragraph of the contract. That such arrangement does not create a partnership in the land the following authorities clearly establish: Gordon v. Gordon, 49 Mich. 502, 13 N. W. 834; Wheatley's Heirs v. Calhoun, 12 Leigh, 264; Alexander v. Kimbro, 49 Miss. 529; Ashby v. Shaw, 82 Mo. 76; Donnell v. Harshe, 67 Mo. 170; 1 Bates, Partn. §§ 286, 287; Crawshay v. Maule, 1 Swanst. 495, 518, 523. It is true that the second paragraph of the contract declares "that each of the parties hereto shall share equally in all expenses, losses, and profits growing out of, and attendant upon, the business contemplated by this agreement." The meaning and purpose of which, as applied to the whole contract, was that Lloyd was to manage and operate the property at the joint expense of the two parties, the losses and profits, if any, to be shared equally between them; but, as decisive of the fact that it was not the intention of Guinn that the land should thereby become partnership estate, the contract expressly recites, in the opening preamble, that "J. C. Guinn, of the county of Jasper and state of Missouri, is the owner of the * * * real estate"; and then the third paragraph expressly provides that Lloyd might become part owner when Guinn should be paid $6,000 and interest. By the very terms of the habendum clause in Guinn's deed to Lloyd, he excluded the thought of any partnership interest then subsisting in the land:

"To have and to hold the same, with all the rights, immunities, privileges, and appurtenances thereto belonging, unto the said party of the second part, and his heirs and assigns forever, so that neither the said parties of the first part, nor their heirs, nor any person or persons for them or in their name or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises, or any part thereof, but they and every one of them shall by these presents be excluded and forever barred."

By operation of law, on the execution and delivery of this deed Lloyd and Guinn became tenants in common of the land. If the land because a partnership estate, it was because of an agreement thereto between the parties, entered into subsequent to the creation of the joint tenancy. In a case thus situated, a partnership in the land, as between the alleged partners, does not result by implication of law. It must be created by agreement. Dunham v. Loverock, 158 Pa. St. 203, 27 Atl. 990. As there is in evidence no express contract, if found at all it must be implied in the acts and

dealings between the parties. As held by the supreme court of this state in Thompson v. Holden, 117 Mo. 127, 22 S. W. 907, in order to transform real estate from its usual character into personalty, the intention to do so should be made very clearly to appear, and the circumstances relied on to evidence such transformation must be such as "fairly exclude every construction under which the property can retain its usual characteristic of real estate." It is not easy to find any valuable act done by the parties after the delivery of the deed, in May, 1883, evidencing an intention to convert the realty into a partnership asset, materially different from what preceded. After receiving his deed from Guinn, Lloyd seems to have proceeded with the business about as theretofore, nemine contradicente. Being tenants in common, there was, by operation of law, the unity of possession in each of the parties. And it is a recognized rule of law in such cases that, where the conduct and acts of the parties in dealing with the estate may with reason be referred to the office of a tenant in common, the courts, in construing those acts, will prefer to attribute them to that relation. Dunham v. Loverock, 158 Pa. St. 197, 27 Atl. 990. As said by Judge Napton in Donnell v. Harshe, 67 Mo. 172:

"It is essential to a partnership that there be a community of interest in the subject of it, and this community of interest must not be that of mere joint tenants, or tenants in common."

So it was said by Mr. Justice Field in Thompson v. Bowman, 6 Wall. 317:

"The fact that real property is held in the joint names of several owners, or in the name of one for the benefit of all, is no evidence of co-partnership between them with respect to it. In the absence of proof of its purchase with partnership funds for partnership purposes, real property standing in the names of several persons is deemed to be held by them as joint tenants, or as tenants in common; and none of the several owners possess authority to sell or bind the interest of his co-owners."

The prominent acts relied upon by the defendant to evidence the existence of a partnership in the real estate are as follows: Conducting mining operations on the land; leasing part of it for such purpose; cultivating it as farm lands; giving it in to the assessor of the county by Lloyd in the name of the joint owners; paying taxes thereon; and making concessions, after consultation with Guinn, for railroad rights of way over the land. Certainly these are acts not only consistent with the office of a tenant in common, but perfunctory. The keeping of books by Lloyd, who was in charge of the property and the business, keeping account of expenditures and incomes attending the use of the premises, were no more than what the law would exact between such joint owners. Gordon v. Gordon, supra; Wheatley's Heirs v. Calhoun, 12 Leigh, 264; Alexander v. Kimbro, 49 Miss. 529. Guinn cannot be heard to complain that Lloyd consumed or exhausted a portion of the freehold for mining, or leasing for mining purposes, inasmuch as he consented thereto, and lays claim to the profits. The construction and maintenance on the land of pumping machines, as aids for mining operations conducted thereon, are referable to the relation

of co-tenancy as much as to that of co-partners. It might be conceded, for the purpose of this case, that a partnership existed between the parties in conducting a business on these lands, without affecting the legal status of the land or property, for the separate properties may be employed in partnership business. McCrary v. Slaughter, 58 Ala. 230–234; Deyerle v. Hunt, 50 Mo. App. 541. To hold that this land became a partnership asset, it must be found that while Lloyd was conducting the business he could have disposed of the whole property, the interest of himself and Guinn, "for its purposes." That such was not in the contemplation of Guinn himself is evident, in the first instance, from the written contract between him and Lloyd, and, in the second place, by the deed he made to Lloyd in May, 1883. Only a minor portion of the land was ever used for mining purposes, and what was so used was principally under leases to tenants,—acts which a tenant in common could do without clothing him with the character of a partner. My conclusion is that the land in question was not a partnership asset, and is subject to partition and the assignment of the widow's dower, and therefore the special answer of the defendant is not sustained.

The proceedings being conducted by Guinn in the probate court of Jasper county, in this state, in administration as a surviving partner, whereby he is seeking to treat this land as a partnership estate, and subject it to sale for the payment of a large balance claimed in his favor as on accounting between partners, is no bar to this proceeding. It is at most but a proceeding in a probate court in administration in another jurisdiction, pendente lite. Stanton v. Embrey, 93 U. S. 548; Insurance Co. v. Brune's Assignee, 96 U. S. 588; Crescent City Live-Stock, Landing & Slaughterhouse Co. v. Butchers' Union Live-Stock, Landing & Slaughterhouse Co., 12 Fed. 225; Briggs v. Stroud, 58 Fed. 720. The matters of special plea are therefore overruled, with direction to the defendant to make answer to the bill on its merits by the 15th day of October next, if he desires to make further contention.