IVINS, Respondent, v. HARDY, Appellant

No. 8685

Submitted March 3, 1947. Decided April 15, 1947.

179 Pac. (2d) 745

Messrs. Farr & Colgrove, and Mr. George W. Farr, all of Miles City, and Mr. F. F. Haynes, of Forsyth, for appellant. Mr. Haynes argued the cause orally.

Mr. W. B. Leavitt and Mr. D. L. O'Hern, both of Miles City, Mr. Chester E. Onstad, of Broadus, and Messrs. Porter & Porter, of Crawford, Nebraska, for respondent. Mr. Leavitt argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action for the purpose of dissolving an alleged co-partnership and for an accounting, and sought the sale of alleged partnership property.

The complaint alleged that the partnership agreement was formed on the 20th day of September, 1939, that being the date of the inception of their relationship and the date when they, as vendees, entered into a written contract for the purchase of

land situated in Custer and Powder River counties. The answer denied the existence of a partnership between plaintiff and defendant. The court, after making findings of fact, made conclusions of law to the effect that the agreement between the parties was a joint adventure and the relationship of the parties was that of joint adventurers. It ordered a dissolution of the joint adventure and that plaintiff was entitled to an accounting of all the business done by the parties in connection with the joint adventure, and ordered the sale of all of the property both real and personal. The defendant has appealed from the decree.

The principal question presented by the appeal is whether the court was right in finding and holding that the relationship between the parties was that of joint adventurers. Defendant contends that their relationship was that of tenants in common. Plaintiff, on the other hand, assigned cross-error and asserts that the relationship of the parties constituted them as partners. He likewise contends that if their relationship was not that of partners then the evidence was such that the court was justified in finding that they were joint adventurers and that in either case the decree should be affirmed.

In order to determine the relationship of the parties it becomes necessary to make a somewhat detailed statement of the facts pertaining to their business transactions.

It appears that in the summer of 1939 Hardy was engaged in the livestock business in Wyoming. Because of a shortage of grazing there through drought, he was forced to move elsewhere. He heard of a certain ranch, known as the LO Ranch, situated in Montana which was for sale and he came to Montana to look it over. The ranch suited his needs. Being unable financially to buy the property alone, he sought financial aid elsewhere. He heard of plaintiff, a practicing physician at Crawford, Nebraska, and went to see him and sought his aid in undertaking the venture. His proposition to Ivins, according to the latter's testimony, was: ''That we form a partnership and go up and buy the LO Ranch and stock it and get rich quick and run the thing and lease lands and pay expenses and make the pay-

38

ments and so on." The defendant pointed out to plaintiff that the way to finance the deal would be by the running of livestock on the land which they might individually own, together with livestock belonging to others, and lease such lands as were not required for their own use and, if they were able to borrow money, they could buy livestock and thereby stock the ranch.

The proposition appealed to plaintiff sufficiently so that he took a trip with the defendant to look over the ranch. After looking over the place plaintiff stated to the defendant that he was enthusiastic about it. They then discussed means of meeting expenses of running the ranch and meeting the purchase price. They discussed the matter of taking in and feeding livestock for others in addition to running their own individual cattle and sheep. They discussed the matter of receiving AAA benefits, of raising feed and hay and leasing out the land not required for their use. Defendant assured plaintiff that he was able to take charge of the actual operation of the ranch.

They finally agreed to purchase the ranch and the plaintiff testified that it was then agreed that each should put up half of the expenses and that each would be "equal partners in every way." Shortly thereafter and on the 20th day of September, the parties entered into a written contract for the purchase of the ranch in question from Arthur T. McIntosh, trustee, for the agreed price of $117,094.91 payable in installments of $15,000 on the date of the agreement and the sum of $13,322.77 on November 15, 1940, and an equal sum on the 15th day of November of each year thereafter for nine additional years with interest at 7%. The purchasers agreed to pay the taxes for the year 1940 and thereafter. In the agreement R. L. Ivins and Robert F. Hardy were named as the purchasers and the agreement contains no suggestion that they were purchasing as a partnership. Besides land the contract included livestock brands, hay, feed and some machinery and equipment. It is conceded that both parties were to contribute equally to the purchase price, taxes and expense of operation and were to equally share the

profits. The defendant was to live on the ranch and have charge of its operations.

There is evidence and the court found that the parties agreed to lease and purchase additional lands necessary to block up their holdings into compact units; that they would take in livestock belonging to others to run and graze; lease land not required for their needs; that they would individually place on the land such livestock as each might have and each be charged grazing fees accordingly; and that, when they were able to get money, they would purchase jointly as partnership livestock, whatever stock was necessary to complete the carrying capacity of the ranch. Upon the execution of the contract each of the parties paid his share of the initial payment. Defendant moved onto and took charge of the ranch operations. Both plaintiff and defendant placed livestock on the ranch which were run and cared for by defendant. Defendant also took in livestock for grazing belonging to other persons. Plaintiff and defendant both attempted to raise money with which to buy partnership livestock but their attempts were unsuccessful.

Defendant has failed to account to the plaintiff for income received by him in the operation of the ranch and it may fairly be said that there has arisen such irreconcilable discord and dissension between the two that the reasonable and successful joint prosecution of the undertaking is no longer possible, and this, in effect, is what the court found.

As further bearing upon the relationship of the parties, reference should be made to the fact that defendant prepared the income tax returns for the enterprise in the name of "Ivins and Hardy" on a form designated "Partnership Return of Income." This was done for the income of the year 1940, 1941, 1942 and 1943, but for the year 1944, which was after this action was commenced, while the return was made on the same form the nature of the organization was typewritten in as "Joint Venture."

The record shows and the court found that the parties never obtained finances with which to purchase livestock jointly and hence have never engaged in the livestock business. It is con-

ceded that the individual livestock run on the ranch by each of the parties to this action remained the property of the individual and did not become partnership property. There was, however, one band of sheep which was designated as a partnership band, which consisted of culls from the sheep owned by plaintiff and defendant individually.

The money for the purchase price of the land and the payment of taxes was furnished by each the plaintiff and defendant in equal shares.

The livestock brands were assigned by the LO Cattle Company to "R. L. Ivins and Robert F. Hardy, co-partners doing business as Ivins & Hardy." Defendant recorded these assignments. On cross-examination defendant admitted: "It is a joint venture." Also, since the institution of this action, plaintiff and defendant, each acting separately, have executed oil leases, each on his half interest in the real estate.

The record contains innumerable letters between the parties but they shed little light upon the relationship between them. In other words, the letters can be reconciled equally with the idea that they were tenants in common in the ownership of the real estate as claimed by defendant as with the idea that they were joint adventurers as found by the court.

With this evidence in mind, we consider now the rules of law from which it must be ascertained what the relationship of these parties was, one toward the other. It must be conceded that when the purchase price of the land involved is paid and the time arrives for a deed, the deed should run to R. L. Ivins and Robert F. Hardy, the same as does the contract of purchase. In Rockefeller v. Dellinger, 22 Mont. 418, 56 Pac. 822, 823, 74 Am. St. Rep. 613, this court said: "The deed runs to Gordon C. Vineyard and Samuel D. Root as grantees, from which the inference arises prima facie, that they took, not as partners, but as tenants in common; each owning an undivided half-interest." This seems to be the general rule when property is purchased by two or more persons. 33 C. J. 842, 48 C. J. S., Joint Adventures, sec. 1.

That is the effect of sections 6682 and 6683, Revised Codes, which read: "An interest in common is one owned by several persons, not in joint ownership or partnership" (sec. 6682), and "Every interest created in favor of several persons in their own right, including husband and wife, is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint interest, as provided in section 6680." Sec. 6683.

"In other words, such an estate [meaning a tenancy in common] is created whenever the instrument bringing an estate in two or more persons into existence does not specifically state that the estate created is one other than a tenancy in common." 7 Cal. Jur. 342; and compare Dalton v. Keers, 213 Cal. 204, 2 Pac. (2d) 355.

In Clark v. Sidway, 142 U. S. 682, 12 S. Ct. 327, 330, 35 L. Ed. 1157, the court said: "The transaction between Sidway and Clark of their joint purchase of the land did not constitute a copartnership in respect thereto. It was a single, special adventure on joint account, involving the payment in equal proportions of designated sums of money. It was a mere community of interest in the property, and the agreement to share the profits and losses on the sale of the land did not create a partnership. The parties were only tenants in common, and the action at law would lie." To the same general effect is Thompson v. Bowman, 6 Wall. 316, 18 L. Ed. 736.

There being in the contract of purchase no indication that the purchasers were buying as co-partners, their relationship, so far as the ownership of the real estate was concerned, became prima facie that of tenants in common rather than of partnership. What then is the record as to the joint adventure.

It should be noted at the outset that while the parties still owe installments on the purchase price of the real estate, the record does not indicate that accrued installments have not been paid. There is no right of third parties involved. The issue is solely one of the relationship between the two parties as between themselves.

It is our view that the evidence bearing upon the question of a joint venture does not overturn the presumption or inference that the parties were and are tenants in common in the ownership of the real estate but that the court properly found that in the operation of the ranch the owners thereof embarked upon a joint venture. The joint venture between the parties was but the natural dealing between tenants in common for the development and use of the common property under a plan mutually beneficial to the tenants in common.

The case of Dunham v. Loverock, 158 Pa. 197, 27 A. 990, 991, 38 Am. St. Rep. 838, has comparable features. There tenants in common entered into an agreement to drill an oil well on their land. A dispute arose over the cost of the well, one tenant in common claiming a balance due from the other and claiming the existence of a partnership. The court pointed out that the agreement claimed to be a partnership "was an undertaking which was appropriate to tenants in common, since it would increase the product of the common property." The court further said: "To be sure, there was undivided possession of the lease, but unity of possession is one of the distinguishing characteristics of a tenancy in common. There was contribution to the cost of operating the well or wells, but this could be compelled between tenants in common by bill, or by account render. There was division of the product, but this was in accordance with the rights of the cotenants. Each had a right to share in the product in proportion to his interest in the estate. It may be said that there was a resulting division of profits, since, if the product exceeded the cost of production, there was a profit to each part owner; but it was shown by the settlement of his individual accounts, only, and grew out of the fact that he received from his share of the product more than it cost him to secure it. So it may be said there was a contribution to losses, since each tenant sustained a loss when the value of his share of the product fell below its cost to him; but this was the individual loss of each, with which no one else had any concern, and to which no one was bound to contribute. There is therefore no circumstance re-

lating to the business done upon, or the development of, the lease, not fairly and naturally referable to the relations the parties sustained to each other as tenants in common. There is no agreement shown that tenants in common might not properly make with each other for the development of the property, in which each held a separate title, but an individual possession. Between persons so situated, a partnership does not result by implication of law. It must be created by an agreement.''

The only difference between that case and this is that in the Dunham case it was conceded that originally the parties were tenants in common of the real estate, whereas here it is contended by plaintiff that they were partners or joint adventurers in the real estate at the inception of their undertaking.

Our view is that at least prima facie the relationship of the parties in this case was that of tenants in common at the inception of their dealings and that if that relationship was changed to one of partnership or joint adventure in the real estate, it was because of the agreement made for the operation of the property. That agreement, we hold, was referable to the relation of tenants in common and did not serve to change the relationship so far as the ownership of the real estate was concerned. They still held it as tenants in common. Nor do we think the result is affected by the fact that at least a part of the purchase price of the property was hoped to be paid out of earnings arising from the joint operations.

To the same general effect as the Dunham case, under somewhat similar facts, is the case of Borum v. Deese, 196 Ga. 292, 26 S. E. (2d) 538, 150 A. L. R. 999.

It is our holding that the court was right in finding a joint ■■ adventure in the operation of the ranch property to the extent that it was proper to order an accounting. Likewise, if defendant purchased land located within the boundaries of the lands covered by the McIntosh contract or immediately adjoining the same, plaintiff is entitled to have the same considered as part of the estate held by the tenants in common upon charging him his proportionate share of the purchase price. In other

words, there is sufficient evidence tending to support the allegations of the complaint that a part of the joint venture between the tenants in common was to purchase additional lands for the ''mutual and joint benefit of the parties.'' If this was actually done the accounting should so show and plaintiff should receive the benefit thereof and be charged with his share of the purchase price.

The court erred, however, in ordering a sale of the real estate. As above noted it was and is held by the parties as tenants in common. The agreement for the joint operation of the ranch did not destroy the relationship of tenants in common in its ownership. It is noteworthy that our statute, section 6679, Revised Codes, does not recognize ownership of real estate by joint adventurers, as such. It does recognize partnership interests in real estate, but we think the evidence falls short of proof that the relationship was different from what the law presumes when two or more persons buy real estate together, viz., tenants in common.

Defendant contends that the court erred in awarding costs to plaintiff. Section 9787 allows costs to a successful plaintiff in the cases there enumerated. Section 9789 allows costs in all other cases in the court's discretion. Plaintiff did not prevail on the exact theory outlined in his complaint but he obtained the precise relief sought (Butler v. Union Trust Co., 178 Cal. 195, 172 Pac. 601; Keyes v. Nims, 43 Cal. App. 1, 184 Pac. 695), and the court was right in entering judgment for costs.

The cause is remanded with directions to modify the decree in accordance with the views herein stated and as thus modified will stand affirmed. Each party will pay his own costs on this appeal.

Mr. Chief Justice Adair and Associate Justices Cheadle, Choate and Metcalf concur.