No. 14946

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

GREGORY J. WALSH,

Plaintiff and Respondent,

vs.

ELLINGSON AGENCY, a Montana
Corporation, and FOUR SEASONS MOTOR INN,
a Montana Corporation,

Defendant and Appellant.

Appeal from:   District Court of the Eleventh Judicial District,
Honorable Robert Holter, Judge presiding.

Counsel of Record:

For Appellant:

Murray, Kaufman, Vidal and Gordon, Kalispell, Montana

For Respondent:

Warden, Christiansen and Johnson, Kalispell, Montana

Submitted on briefs: April 25 1980

Decided: July 22, 1980

Filed: JUL 23 1980

_____
                                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff-respondent Gregory Walsh brought this action for specific performance of a real estate sales contract in the Flathead County District Court. The court awarded specific performance and the two corporate defendants appeal.

In late February or early March of 1977 Gregory Walsh contacted Chet Ellingson at the Ellingson Agency, an insurance and real estate corporation, concerning an advertised parcel of real estate. After finding the price prohibitive on this piece of property, he detailed his needs to Mr. Ellingson. Walsh was looking for a lot 150' by 300' or larger located near a grocery store in order to construct an apartment complex. Mr. Ellingson showed Walsh a lot that he thought might meet Walsh's needs. The lot was on the southeast side of Kalispell near Roseaurs' and the Outlaw Inn. Ellingson told Walsh that he owned the property with "some partners" and that it was for sale for $30,000.

On March 17, 1977, Walsh returned to the Ellingson Agency and told Chet Ellingson that he wished to buy the property for $29,000 cash. A buy-sell agreement was drafted and signed by both parties, and Greg Walsh gave Ellingson $1,000 in earnest money. A closing date of April 5, 1977 was set.

Prior to March 17 the other owners of the property had not been disclosed. Walsh's testimony reveals that on the day he first saw the property Chet Ellingson said, "I and my partners own the piece of property" and "that [$29,000] was the lowest we can go." Ellingson testified, "I had told him [Walsh] that I did have some partners and I just said I thought it would be okay." Mr. Ellingson also testified that he never told Gregory Walsh that he had authority to bind others and that he implied that corporate resolutions from the other people were necessary.

- 2 -

Shortly after March 17, 1977, Walsh received a title insurance policy which revealed that the property was owned by the Ellingson Agency and Four Seasons Motor Inn as tenants in common. This is the first time that Walsh learned who the other "partners" were.

On April 5, 1977, Gregory Walsh went to the Ellingson Agency and told Mr. Ellingson that he was ready to write a check pursuant to the buy-sell agreement. Mr. Ellingson told Walsh that he could not get his partners to sell, and he offered to return the $1,000. Walsh would not accept the return of his earnest money.

The Four Seasons Motor Inn is a corporation owned by three brothers, Con, Dan and Everett Lundgren. Con Lundgren, a vice-president and director of Four Seasons, testified that Chet Ellingson had no authority to sell the property and had never approached Four Seasons concerning a sale of the property.

Chet Ellingson also testified that he had no authority to act for the Four Seasons but that he thought the sale would be acceptable to the Four Seasons. He also stated that he never told Walsh that he would have to deal or talk to his co-owner to make arrangements for the sale as far as the buy-sell agreement is concerned. Mr. Ellingson further testified that he is a licensed real estate broker and that he has been in business in the Kalispell area for twenty years.

Testimony was also adduced concerning a prior land holding between Ellingson Agency and Four Seasons. According to the testimony, the two corporations had purchased another parcel of land which was sold in 1975. Chet Ellingson was approached by an individual concerning the sale of the first parcel. He testified that he talked it over with Con Lundgren and they decided on a price to offer the prospective buyer. The offer was accepted and the proceeds were equally divided between the Ellingson Agency and the Four Seasons. Ellingson testified that both real estate dealings were investments for profit between long-time friends.

The subject property also has a building on it which is suitable for a residence. Chet Ellingson testified that he manages the property, "so to speak." He receives rent and keeps ledgers of the receipts which are used to pay taxes and maintenance.

Plaintiff Gregory Walsh filed a complaint on November 18, 1977, seeking the execution and delivery of a warranty deed to the subject property or in the alternative a quitclaim deed of Ellingson's interest in the property and actual damages as reimbursement for expenses occasioned as a result of the defendants' refusal to perform. Plaintiff alleged that Chet Ellingson represented that he was the agent of the other owners and was authorized to contract to sell the property. It was further alleged that Chet Ellingson had apparent authority to sell the property by reason of his status as the president of Ellingson Agency and as a licensed real estate broker.

The trial before the District Court, sitting without a jury, was concluded on April 5, 1979. The court's findings and conclusions were entered on May 23, 1979. The court made the following relevant findings and conclusions: that Chet Ellingson made reference to his ownership of the property with his "partners" without identifying them; that plaintiff did not know nor could he infer that the "partners" referred to were "persons or entities extraneous to Ellingson Agency"; that the buy-sell agreement was drafted by Chet Ellingson and was duly executed and "appears clear and complete on its face and does not appear to require the signature of any additional party"; that plaintiff tendered the $28,000 balance due under the buy-sell agreement but Mr. Ellingson refused to tender a deed to the property; that the defendants "are engaged in a partnership involving the purchase of real estate on a parcel by parcel basis for later sale at a profit"; that Chet Ellingson acted as an agent of the partnership and had the "ostensible authority" of both defendants to contract to sell the subject property; that the buy-sell agreement is complete on its face and specifically enforceable as against

- 4 -

the interests of both defendants in the subject property.

Judgment was entered against the defendants on May 30, 1979. The defendants were ordered to specifically perform the terms of the buy-sell agreement by conveying their interests in the subject property by warranty deed.

Two issues are presented on appeal:

(1) Whether there was sufficient evidence to support a finding that defendants were a partnership as tenants in common owners of certain real property; and

(2) Whether Chet Ellingson had authority to contract to sell the subject property on behalf of both defendants.

If the District Court was correct in concluding that a partnership exists between the appellants, the second issue is answered by section 35-10-301(1), MCA, which provides:

> "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership unless the partner so acting has in fact no authority to act for the partnership in the particular matter and the person with whom he is dealing has knowledge of the fact that he has no such authority."

Chet Ellingson represented that he and his partners owned the property, and the respondent had no knowledge that he did not have authority to sell the property. Thus, if a partnership exists, it is bound by the contract drafted and signed by Chet Ellingson on behalf of the Ellingson Agency. Consequently, we must address the sole issue of whether or not there was substantial evidence to support the trial court's determination of the existence of a partnership.

It is well established that a partnership may be created for the purchase and sale of real estate for a profit. Harmon v. Martin (1947), 71 N.E.2d 74, 395 Ill. 595; 68 C.J.S. Partnership §6. Pursuant to section 35-10-202(2), MCA, the holding of property as tenants in common is not in itself sufficient to establish the existence of a partnership, however, "it is well

- 5 -

settled, that a partnership can acquire real estate by having the partners take title as cotenants." Robertson v. Robertson (1978), _____Mont._____, 590 P.2d 113, 116, 35 St.Rep. 1889, 1892. In general a partnership requires an agreement between the parties which may be oral or written, express or implied by conduct. Gustafson v. Taber (1951), 125 Mont. 225, 234 P.2d 471; Robertson v. Robertson, supra. There need be no partnership name and a partnership will be found if persons engage in a venture for their mutual benefit or profit, Cutler v. Bowen (Utah, 1975), 543 P.2d 1349, and if persons enter into an informal agreement to purchase and later sell land there need be no evidence that they discussed any terms of the agreement other than equal ownership of the property purchased for later sale. See Mathis v. Meyeres (Alaska 1978), 574 P.2d 447.

The evidence reveals that the appellant corporations had previously bought and sold an unimproved lot. The property was held as a tenancy in common and the corporations made equal contributions and received equal distributions of the proceeds. The subject property was also owned by the appellants as tenants in common with each contributing equal shares of the purchase price. The purpose of both purchases was to sell the property for a profit, and Chet Ellingson represented that he and "partners" owned the subject property. The Ellingson Agency collected rent from the subject property and kept records of the amounts collected. The rent proceeds were used to pay property taxes and maintain the structure. No rent distributions were made to either of the tenants in common. On the basis of this evidence the District Court concluded that the appellants "are engaged in a partnership involving the purchase of real estate on a parcel by parcel basis for later sale at a profit" and that "Chet Ellingson acted as an agent of the partnership for the purpose of carrying on the partnership business."

With regard to the standard of review, this Court has repeatedly stated it will not overturn findings of fact and

conclusions of law if supported by substantial evidence and by the law. Evidence will be viewed in the light most favorable to the prevailing party. Rule 52, M.R.Civ.P.; Luppold v. Lewis (1977), 172 Mont. 280, 563 P.2d 538; Morgen & Oswood Construction Co. v. Big Sky of Montana, Inc. (1976), 171 Mont. 268, 557 P.2d 1017. The judgment of the District Court is presumed to be correct and will be upheld unless clearly shown to be erroneous; the burden of such showing is upon the appellant. Kamp v. First National Bank and Trust Co. (1973), 161 Mont. 103, 504 P.2d 987.

In viewing the evidence in the light most favorable to the respondent, we cannot find the judgment of the District Court to be clearly erroneous. There was substantial evidence to support a finding of the existence of a partnership by reason of the appellants' conduct with regard to the past and present real estate transactions. As a result of the existence of a partnerhip and section 35-10-301(1), MCA, the appellants are bound by the buy-sell agreement executed by the Ellingson Agency.

The appellants strongly rely on this Court's finding of no partnership in Ivins v. Hardy (1947), 120 Mont. 35, 179 P.2d 745. In Ivins the District Court found a partnership existed between tenant-in-common owners of real estate; however, this Court reversed, finding that the partnership was formed after the purchase of the interest in land. Were we faced with the same facts today, we would find sufficient evidence to support the District Court's finding in Ivins that the real estate was held as partnership property. We distinguished Ivins on the facts in Robertson v. Robertson, supra, however; today we are compelled to expressly overrule Ivins to the extent of the finding of no partnership in existence with respect to the purchase and ownership of real estate.

The judgment of the District Court is affirmed.

_____
Chief Justice

- 7 -

We concur:

_George B. Cahp_

_John Conway Harrison_

_____

_John C. Sheehy_

Justices