MAYNARD ET AL., RESPONDENTS, *v.* BARA ET AL., APPEL-
LANTS.

(No. 7,204.)

(Submitted February 6, 1934.  Decided March 5, 1934.)

[30 Pac. (2d) 93.]

*Messrs. Duncan & Duncan,* for Appellants, submitted a brief; *Mr. M. M. Duncan* argued the cause orally.

*Mr. Frank E. Blair,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiffs, as county commissioners of Madison county, brought this action against the defendants, as owner and mortgagee, respectively, of certain lands and premises, seeking to have a certain road across them declared to be a public highway, and to have the obstruction of the same by defendant Bara enjoined.

· Plaintiffs in their complaint alleged their official capacity, the existence of Madison county, that the action was brought pursuant to resolution of the board of county commissioners, the appointment of Jennie E. Squires as administratrix of the estate of Bert Squires, deceased, and a description by courses and distances of the road. They further alleged that the road in question "has been in continuous use by the public since more than ten years next preceding July 1, 1895, and the defendants and each of them own said land subject to said public road and public highway," and that the defendants Bara had obstructed the road by fences and locked gates.

Defendants by their answer admitted that the plaintiffs were the commissioners of Madison county, the existence of the county, the commencement of the action pursuant to resolution

of the board of county commissioners, the appointment of the administratrix, their ownership of the land, and the obstruction of the road, and denied the other allegations of the complaint.

The cause was tried as one in equity before the court sitting without a jury. It was stipulated that the lands and premises described in the complaint had been owned by the defendants and their predecessors in interest continuously since 1885.

The course of the road in general meanders along North Meadow Creek. No fences have ever been maintained on either side of the road; it crosses a field which is inclosed by fences. The road consists of a track made by vehicles passing over it, and is not sufficiently wide to permit of their passage on its traveled portions. The testimony discloses its use as early as 1876; and apparently it had been used at an earlier date, according to the witnesses testifying from its appearance at that time. It leads across the ranch of the defendant Bara to the boundary of the forest reserve. In the early days it was used for the transportation of timber and also of lumber from a sawmill located in what is now the forest reserve. The road does not lead to any ranch, postoffice or settlement.

Plaintiffs offered much testimony as to the road being traveled by the public. Gates were maintained across it during much of the time covered by the testimony of the witnesses. The testimony on this question will be discussed more in detail later. Bridges across the creek mentioned were built by private individuals. The county had never at any time caused any work to be done on the road. It does appear in the record, however, that it did at one time furnish lumber for the construction of a bridge, but on another and later occasion, when requested, refused to furnish material for the repair of a bridge. All the witnesses concede that the location of the road has been changed at various places. All agree its location was changed for a distance of approximately 400 yards at one end of the road.

The court, following the trial, made findings of fact in conformity with the admissions found in the pleadings, and: "That for several years prior to the year 1880 there was a well-defined

highway across [certain described lands], which said highway was from sometime prior to the year 1880 until sometime within three years from the date of the commencement of this action openly and notoriously used by the general public as a public road and highway without let or hindrance of any kind except that for the convenience of the owners of the contiguous lands and the lands traversed by said road, * * * the owners of said lands at some time, the exact date of which is not certain, erected fences completely enclosing the entire tracts traversed by said road from which date gates were maintained which might be and were readily opened and closed by any member of the public desiring to travel such highway without asking permission of the occupant or occupants of said enclosures, and that all of said times said general public travel upon said highway was either known to the owners and occupants of the lands or in the exercise of very slight care or diligence could have been known to them.'' The court further found that during all the times referred to in the quoted finding, the public traveled exactly the same route, except for slight deviations caused by weather conditions which in no instance materially changed the highway from its exact route, and two other changes made across the lands now occupied by the defendant Bara, which changes were made for the convenience of the owners of the lands.

Conclusions of law were made and a decree was entered in accordance with the findings and conclusions, wherein it was adjudged that the road described in plaintiffs' complaint was a public highway, and the defendants were enjoined from obstructing the same. The appeal is from the judgment.

Defendants have made numerous specifications of error which challenge the sufficiency of the findings to support the judgment as well as the sufficiency of the evidence to support the findings.

The only theory upon which the findings and judgment can be sustained is that a highway was established across the lands of the defendants either by prescription or common-law dedication. Admittedly the highway was not established in

any other manner. Apparently it was the theory of the complaint that a highway was established across these lands prior to July 1, 1895, by prescription. Prior to that time, a highway, under the laws of Montana, could be established by prescription. (*State ex rel. Dansie* v. *Nolan*, 58 Mont. 167, 191 Pac. 150; *Violet* v. *Martin*, 62 Mont. 335, 205 Pac. 221, 223; *Moulton* v. *Irish*, 67 Mont. 504, 218 Pac. 1053.) By reason of certain statutory enactments which became operative on July 1, 1895, a highway could not be established by use unless the use was accompanied by some action on the part of the public authorities having jurisdiction of the subject, tantamount to a declaration that the particular road was a public highway. (*State ex rel. Dansie* v. *Nolan,* supra.) The statutes pertaining to this subject are reviewed in the *Nolan Case,* supra, and it is unnecessary to again review them and reiterate the reasoning forming the basis for the foregoing conclusion. This condition of the law with relation to the subject under discussion continued until 1913, when the applicable statutes were again amended so that their status was similar to that existing prior to July 1, 1895. (See *State ex rel. Dansie* v. *Nolan*, supra.)

It is unnecessary, as we shall presently see, for us to determine the exact status of the law as to the establishment of a highway by prescription subsequent to 1913.

The court found that from time to time changes had been made in the location of the road, but that such changes were either immaterial or had been made for the convenience of the land owners. In order to establish a public highway by prescription, without color of title, by proof of travel over it for the statutory period, the testimony must definitely show a use of the identical strip of land over which the right is claimed. (*Pope* v. *Alexander,* 36 Mont. 82, 92 Pac. 203, 565.) This court in the case of *Violet* v. *Martin,* supra, said: ''To arrive at a conclusion that a way over the lands of another is a public road, the evidence must be convincing that the public have pursued a definite, fixed course, continuously and uninterruptedly, and coupled it with an assumption of control and right of use adversely under claim or color of right, and not

merely by the owner's permission, over it for the statutory period (five years before the adoption of the 1895 Code and 10 years since), without which prescriptive rights cannot attach." This statement was quoted with approval by this court in the case of *Moulton* v. *Irish,* supra.

A fixed and definite course does not permit of any deviation. (*Violet* v. *Martin,* supra.) The occupancy or use by the public of one portion of the road does not avail it in its claim to another portion not occupied by it. In any case the public may obtain title by adverse possession of that only which it has occupied during the full statutory period. (*Scott* v. *Jardine Gold M. & M. Co.,* 79 Mont. 485, 257 Pac. 406.)

The court's findings of the deviations or changes in the road ▮▮▮▮ do not support the judgment. Before a road may be established by prescription over the lands of another, the evidence must be clear and convincing that the use of the road by the public was adverse and not merely permitted by the land owner. (*Violet* v. *Martin,* supra.) The fact that the passage of a road has been for years barred by gates or other obstructions to be opened and closed by the parties passing over the land, has always been considered as strong evidence in support of a mere license to the public to pass over the designated way. (*Quinn* v. *Anderson,* 70 Cal. 454, 11 Pac. 746; *Huffman* v. *Hall,* 102 Cal. 26, 36 Pac. 417; *De la Guerra* v. *Striedel,* 159 Cal. 85, 112 Pac. 856.) Our own decision in the *Violet Case,* supra, with reference to the obstruction of a road by gates, is in accordance with the foregoing statement. Evidence of use by the public of a road obstructed by gates, standing alone, is insufficient to establish a highway by prescription.

Much testimony was offered by the parties with reference to the subject of gates across the road; and in order truly to present the evidence as it was received by the trial court, we must examine it somewhat in detail.

J. I. Haynes testified that he was familiar with this road in the years 1877, 1878 and 1879. He said, "No, there was no fences that I remember of anywhere near the road," and that

he "rode up and around that road, crossed and recrossed it again looking after the stock," but never followed the road in his traveling in that vicinity during those years.

J. A. McAllister, another witness for plaintiffs, in response to an inquiry as to whether there was any fence on the road in the year 1878–79, said: "Not over the road. That is my recollection; there is no fence over the road." He further testified that he could not state positively as to whether there were gates or fences across the road from 1890 to 1895.

Jacob Bower testified with reference to the year 1883: "As far as gates and bars are concerned, I cannot remember." He was there only a couple of months during the year 1883, and admitted that he was not much acquainted with conditions prevailing there at that time.

James H. Gordon testified with relation to gates on the road in the year 1879: "If there were any there, I don't remember."

A. R. Landis, in answer to an inquiry as to the existence of a fence across the road prior to 1900, said: "There may have been a fence. It was open half of the time if it was."

T. H. Vincent testified with reference to gates or bars across the road from 1890 on and said: "I could not remember any there. There could have been possibly." He also testified: "I didn't travel the road. I had no occasion to travel the road very much. I was usually on horseback, and I crossed and possibly traveled it a little bit."

D. L. Stanley, who first became familiar with the road in 1888, when interrogated as to when he first saw gates or bars across the road, answered: "I could not remember that. I could not tell you that." The above-mentioned witnesses testified on behalf of the plaintiffs.

Jennie E. Squires testified on behalf of the defendants that there were gates and fences across the road in 1876 and between 1890 and 1895. W. A. Reel testified as to a fence across the road in 1876. The witness Fletcher on behalf of the defendants testified as to bars across the road from 1890 to 1894. The witness Hodge testified positively as to the existence

of these obstructions in 1888, and the witness Stopel testified as to their existence in 1892.

All the witnesses enumerated as testifying on behalf of the defendants, testified positively; whereas, it will be noted that all the witnesses for the plaintiffs on this subject stated either that they did not have any recollection of gates or bars across the road, or that they did not remember.

The testimony of a witness that he does not remember ██ whether a certain event took place does not contradict in any degree positive testimony that it did occur. (*Lasby* v. *Burgess,* 88 Mont. 49, 289 Pac. 1028; *Lindblom* v. *Employers' Liability Assur. Corp.,* 88 Mont. 488, 295 Pac. 1007; *Gallaher* v. *Theilbar Realties,* 93 Mont. 421, 18 Pac. (2d) 1101.) Therefore, the evidence of defendants' witnesses is uncontradicted as to the existence of gates across the road from the commencement of time, so far as the evidence in this case is concerned, up to and including the year 1895; and in the light of this testimony, a finding of the establishment of a road by user is not supported by the evidence.

The evidence is uncontradicted that from 1913 on, the lands were inclosed by a fence and the road obstructed by gates. Hence there could be no finding of the establishment of the road subsequent to 1913 by evidence of user.

The testimony in this case was lacking in another essential ██ element necessary to the establishment of a road by prescription, namely, the fixing of a definite date at which the statute began to run. This burden was assumed by plaintiffs, but the testimony adduced left the court no basis for a finding on this point (*Moulton* v. *Irish,* supra) ; in fact, the court made no finding in accordance with the foregoing rule.

Plaintiffs contend that a road was established by common-law ██ dedication. One of the essential elements of a common-law dedication is an offer on the part of the owner evidencing his intention to dedicate. (*Kaufman* v. *City of Butte,* 48 Mont. 400, 138 Pac. 770.) There is no evidence in this record tending to establish an intention to dedicate, other than the fact that the public traveled over the road without objection

for a long period of time. Mere permissive use of a highway or road does not prove an intention to dedicate. (18 C. J. 101; *Culver* v. *Converse*, 207 Iowa, 1173, 224 N. W. 834; *Leonard* v. *Pearce*, 348 Ill. 518, 181 N. E. 399; *Mulik* v. *Jorganian*, (Mo. App.) 37 S. W. (2d) 963; *Stees Co.* v. *Reinhardt*, 143 Minn. 340, 172 N. W. 219.) There is no evidence in the record sufficient to support a finding of the establishment of a highway by prescription or by common-law dedication.

The cause is remanded to the district court, with directions to make findings in accordance with the views herein expressed and to enter judgment of dismissal of the action. The defendants will recover their costs on this appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.

Rehearing denied March 12, 1934.