No. 12595

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

ROBERT H. WILSON,

        Plaintiff and Respondent,

-vs-

CLOYD W. CHESTNUT,

        Defendant and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellant:

        Gough, Booth, Shanahan and Johnson, Helena, Montana
        Ward A. Shanahan argued, Helena, Montana

    For Respondent:

        Anderson, Symmes, Forbes, Peete and Brown, Billings,
        Montana
        Weymouth D. Symmes argued, Billings, Montana

---

Submitted: April 26, 1974

Decided: JUL 2 3 1974

Filed: JUL 2 3 1974

*Thomas J. Kearney*
                Clerk

PER CURIAM:

This is an appeal from a judgment for plaintiff entered upon findings of fact and conclusions of law by the district court of Stillwater County. The judgment declared plaintiff the owner of an easement by prescription for the use of a roadway across defendant's land and enjoined defendant from interfering with plaintiff's use of the roadway. Defendant appeals.

The road in controversy is located in Stillwater County, southwest of Dean, Montana. The access road leaves the county road and enters property owned by a Mr. Keller, referred to in the transcript of proceedings as "The Orr Place." The road then enters onto defendant Cloyd W. Chestnut's land; proceeds approximately one-fourth mile across his property; then enters on plaintiff Robert H. Wilson's land terminating at some ranch buildings. Thereafter at least two trails lead to national forest land beyond plaintiff's property.

No one measured the road, but estimates ran from Chestnut's estimate of the width at the cattle guard to each party's property of seven feet to estimates of fourteen to twenty feet at other portions of the road.

The district court found the road had been in existence for some fifty years; dating back to 1920 when patents were issued to former owners of the lands now owned by the opposing parties. This road is, and has been since the patents were first issued, the only road and the only means of access to and from Wilson's property. The district court also found the road is and has been for at least ten years and for many years prior thereto a well defined and well marked road so as to be clearly identifiable from aerial photographs and clearly marked on a topographical map marked as Exhibit #2.

Chestnut is part owner with Iowa B. Spicer and Alena Chestnut of the lands the road in controversy traverses. They purchased the property in 1959 and have raised cattle on the land since that time.

Wilson is the equitable owner of real property located adjacent to and southwest of Chestnut's land under a contract for deed. The property was purchased on May 16, 1972 from Standwood Williams. The contract was subject to a previous contract between Williams as buyer, and E. D. Morehad, as seller, which was dated 1968.

The district court found that in the late 1920's and early 1930's a lodge capable of entertaining several hundred people was constructed on the premises now owned by Wilson. This property was then known as the "4K" and had been operated as a dude or guest ranch. From time to time throughout the years, entertainment and food were supplied by the owners of the 4K ranch for groups such as the Jaycees, and all used the disputed roadway to gain access to the 4K ranch. Moreover, witnesses testified the roadway was never closed by gates, and was occasionally used by the general public as an access way into the national forest protected only by cattle guards at the boundary line of each owner's property.

Shortly after Wilson purchased the 4K ranch he began an advertising campaign introducing a real estate development on the renamed Island Lake Ranch. Realizing the distinct possibility of an increased burden on the roadway Chestnut constructed a locked gate across the road. Shortly thereafter Wilson obtained a temporary restraining order against Chestnut, preventing interference with Wilson and his invitees from traveling over and across the road. Chestnut was ordered to remove the gate or other device blocking or interfering with the use of the road. The matter was later set for trial before the district court, sitting without a jury, on Wilson's claim of a "prescriptive right" to use the road across Chestnut's property.

Following trial the district court entered findings of fact, conclusions of law, and judgment followed on July 11, 1973, in favor of Wilson. On July 25, 1973, Chestnut filed his proposed amendments and exceptions to the court's findings and judgment. These were deemed denied because of lapse of time, pursuant to Rule 59, M.R.Civ.P., and on August 10, 1973, Chestnut filed notice of appeal to this Court.

The district court then entered an order staying execution and preserving the status quo existing in June 1972, pending disposition of the appeal.

On appeal Chestnut presents several issues for review which require consideration of the judgment in some detail. In pertinent part the judgment reads:

"4. The Plaintiff and his successors in interest and the Plaintiff's guests and invitees, as well as the Plaintiff's successors in interest, have acquired a prescriptive right to use the roadway undisputed which is 20 feet in width, extending from the easterly boundary line of the Defendant's lands to the boundary line of the Plaintiff's lands.

"5. That in the event it should be determined by a higher court that this Court erred in its conclusion of law No. 4, then in such event the Court concludes that the Plaintiff and the other individuals described in paragraph 4 have acquired an easement by necessity over and across the Defendant's lands 20 feet in width and extending from the easterly boundary of the Defendant's lands to the lands owned by the Plaintiff.

"6. That in any event, under the deed to the Defendant and to his predecessors in interest their property was acquired subject to the easements of the present roadway which is the subject of dispute in this action for the use of the public generally.

"7. In the event all of the foregoing conclusions of law are reversed by the Supreme Court of the State of Montana, the Court concludes that the Plaintiff and his successors in interest in whole or in part are entitled to a 20 foot roadway across the Defendant's lands by way of condemnation using the existing roadway and subject to whatever compensation to the Defendant that the Court might subsequently find."

The form of the judgment presents three issues:

First. Did the district court err in concluding that Wilson had established a prescriptive easement across Chestnut's land?

The applicable statute to the issue in controversy is section 67-1203, R.C.M. 1947, which provides:

"Occupancy for the period prescribed by Title 93 as sufficient to bar an action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all."

In Title 93, referred to in section 67-1203, are sections 93-2501 to 93-2516, inclusive, which prescribe five years as the period of limitations required to establish a presumption that the land was

- 4 -

used under a claim of right, and adverse; i.e. sufficient to establish a title by prescription and to authorize the presumption of a grant. Te Selle v. Storey, 133 Mont. 1, 319 P.2d 218.

The applicable principles to establish an easement by prescription were set forth in Scott v. Weinheimer, 140 Mont. 554, 560, 374 P.2d 91 and reiterated in Lunceford v. Trenk, _____Mont. _____, 518 P.2d 266, 31 St.Rep. 86, 88:

> "To establish the existence of an easement by prescription, the party so claiming must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period."

This Court in O'Connor v. Brodie, 153 Mont. 129, 137, 454 P.2d 920, commented:

> "'Where the claimant has shown an open, visible, continuous, and unmolested use of the land of another for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right and not by license of the owner. In order to overcome this presumption, thereby saving his title from the incumbrance of an easement, the burden is upon the owner to show that the use was permissive.' Glanz v. Gabel, 66 Mont. 134, 141, 212 P. 858, 860."

Wilson introduced evidence of the road's use by his predecessors to gain access to the 4K ranch for a period of time sufficient to meet the five years required by statute. In addition, he presented evidence of occasional use by the general public. But, the mere use of the road in controversy for the required time is not sufficient to create a title by prescription. Le Vasseur v. Roullman, 93 Mont. 552, 20 P.2d 250.

Chestnut argues that Wilson has failed to show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement for the full statutory period. He maintains the use of the road for access to the 4K ranch was by permission, thus lacking the required proof of adversity and hostility. To support this contention Chestnut refers to the testimony of Stanwood Williams, Wilson's predecessor in interest to the 4K ranch:

"Q. Well, what did Mr., the substance of what Mr.
Morehead told you? [Morehead was the owner of the
4K before Williams, and at the time the action
was commenced the legal title holder of the property.]

"A. Well, the substance of what he, of my under-
standing from him, was that we were allowed use of the
road by Chestnut, use of the road across Chestnut's
property by Chestnut. I never was given to understand
that there was anything in writing, but that there was
use of the road allowed to Morehead by Chestnut."

Although Morehead did not recall specifically telling Williams of

this permission, Williams (who was the equitable owner from 1968

to 1972 when it was transferred to Wilson) was clearly under the

impression that use of the road was by permission of Chestnut.

From the time Morehead purchased the 4K ranch in 1964 until

he sold it to Williams in 1968, Morehead testified to cordial,

neighborly relations between himself and Chestnut. Chestnut visited

the 4K for dinner as a guest at various times. During the winter

Morehead lived on the property; Chestnut helped him and his family

get in and out of the property by a different route because the

existing road was impassable.

The use of the road by Wilson's predecessors was limited to

the summer months for operation of the dude ranch, according to

witness Kratz, and Morehead who ran it for nine years. They would

get over there about May 15 to "start cleaning it up" and by Labor

day it was pretty well over. Testimony also shows that any previous

use was clearly interrupted while Williams owned the property.

Its use as a dude ranch was abandoned in 1971 and subsequently it

was leased for cattle grazing.

In 2 Thompson on Real Property (1961 Replacement), Easements,

§345, the general rule regarding the effect of permission upon

prescription is aptly stated:

"Since prescription must be by adverse use, no use
with permission of the owner can ripen into prescrip-
tion. No easement by prescription can be acquired
where the privilege is used by the express or implied
permission or license of the owner of the land * * *.

"The mere use of a way for the required time is gener-
ally not sufficient to give rise to the presumption of
a grant, and generally some circumstances or act, in

- 6 -

addition to the use, tending to indicate that the use was not merely permissive, is required. When the use of a way has begun by permission it is presumed so to continue as respects the question of prescription. Although the acquisition of a way by prescription does not preclude the use by the servient owner or by the public, it does require a use as of right and not by favor or permission, and no prescriptive right arises if the use originated in amity and continued in recognition of the owner's title. If the use of a way over one's land be shown to be permissive only, no right to use it is conferred though the use may have continued for a century, or any length of time. Such permission may be withdrawn at any time, however long continued. * * *

"* * *A use of a neighbor's land based upon mere neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement. Thus where the use of a way by a neighbor was by express or implied permission of the owner, it was held that the continuous use of the way by the neighbor was not adverse and did not ripen into a prescriptive right. * * *

"* * * If the user began by the permission of the owner, it will not ripen into an adverse or hostile right until notice of such adverse user is brought home to the owner and the user continued thereafter for the statutory period."

In the instant case, unlike Lunceford relied on by Wilson, the owner of the servient tenement, Chestnut, presented evidence sufficient to establish permissive use of the road in controversy.

Second. Since we have determined the district court erred in determining that Wilson had a prescriptive easement across Chestnut's land, did the district court further err in determining that Wilson was entitled to either an easement by necessity, or to acquisition of the roadway by condemnation proceedings?

On the record we hold that it did. Even a cursory reading of the record shows a failure of proof to support either contention. Such evidence as there is tends to the contrary. Wilson obtained a 60 foot easement from one Horton, a neighbor of Chestnut, which runs to within 100 feet of the county road. At that point a steep embankment presents a problem, so that an additional easement from Keller would be necessary to reach the county road. In addition, there was testimony as to the possibility, never consummated, of the forest service providing some sort of access to Wilson's ranch. Suffice it to say the foregoing, coupled with the lack of any evidence as to necessity, is not sufficient to support a judgment for an easement by necessity, i.e. condemnation proceedings.

Third.  Did the district court err in determining that Chestnut acquired his property subject to an easement for a roadway across his property for the use of the public?

We hold that it did.  Chestnut's deed contains the following reservation:

> "Subject to the reservations contained in the United States patent, prior conveyances of record and easements for roads and ditches as now established and located upon or across said premises."

It is elementary that if the "reservations" did in fact grant to the public an easement across Chestnut's land, he took subject to it.  Did the clause in the deed reserve to the public such an easement?  We think not.  It is the majority rule in other jurisdictions that an easement cannot be reserved in favor of a stranger to the deed.  See Annotation, 88 ALR2d 1199.  We are aware of the trend of cases which tend to avoid technical distinctions in order to give effect to the grantor's intent.  For example:  Thisted v. Country Club Tower Corp., 146 Mont. 87, 405 P.2d 432.  Where it appears in a proper case, we will not hesitate to do so.  But here there is nothing to suggest that a departure from the established rule is indicated.  For aught that appears in the record, it is as likely the purpose of the clause in Chestnut's deed was to protect the grantor's warranty of title, as to reserve an easement to the public.

For the foregoing reasons the judgment is reversed.