No. 96-059

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

ROGER A. KESSINGER AND JOANNE
M. KESSINGER, husband and wife,

Plaintiffs and Appellants,

-v-

DONALD MATULEVICH AND JOAN
MATULEVICH, husband and wife,

Defendants, Respondents,
and Cross-Appellants.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas R. Bostock, Warden, Christiansen, Johnson &
Berg, Kalispell, Montana

For Respondent:

Kenneth E. O'Brien, Hash, O'Brien & Bartlett,
Kalispell, Montana

Submitted on Briefs:  May 16, 1996

Decided:  October 22, 1996

FILED

Filed: OCT 2 2 1996

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal and cross appeal from the Eleventh Judicial District Court, Flathead County. Following a nonjury trial and view of the disputed road, the District Court awarded private prescriptive easement rights to Plaintiffs Roger and Joanne Kessinger, Defendants Donald and Joan Matulevich, and two nonparty witnesses, John Winnie and Tom Beeson, over the disputed road. Plaintiffs appeal and Defendants cross appeal. We affirm in part and reverse in part.

We address the following issues on appeal:

1. Did the District Court err in declaring that a private prescriptive easement had been established over the road in question in favor of the Defendants Donald and Joan Matulevich?

2. Did the District Court err in declaring that a private prescriptive easement had been established over the road in question by two nonparties and their successors in interest?

We address the following issues on cross appeal.

3. Did the District Court err in finding that the general public had not used the road in question sufficiently to ripen into a public prescriptive easement?

4. Did the District Court err in declaring that a private prescriptive easement had been established over the road in question in favor of the Plaintiffs Roger and Joanne Kessinger?

**FACTUAL AND PROCEDURAL BACKGROUND**

Rogers Lake is located approximately 30 miles west of Kalispell, Montana. Rogers Lake Road, a county road, provides

2

access to the Rogers Lake area. At a point north of the properties of the Plaintiffs Roger and Joanne Kessinger (Kessingers) and Defendants Donald and Joan Matulevich (Matuleviches), Rogers Lake Road forks. The north fork provides public access to Rogers Lake while the south fork provides access to private property. Approximately one and one-half miles north of Kessingers' property, the Rogers Lake Road ceases to be a county road and turns into a dirt and gravel road, commonly known as Rogers Lane. See Appendix A. Rogers Lane (the road) runs south and crosses the lakeshore properties of Matuleviches (Lots 12 and 13), Frank Bear (Lots 10 and 11) and Kessingers (Lots 1 through 9), respectively. After the road passes Kessingers' property, the road becomes a trail and crosses U.S. Forest Service land, land owned by Plum Creek Timber Company and ultimately winds around Rogers Lake. This road provides the exclusive means of ingress and egress to and from Kessingers' property.

In 1993, Kessingers unified ownership of Lots 1 through 9 which formerly had been owned in four separate tracts. Richard Siegfried (Siegfried) and Lawrence West (West) are two predecessors-in-interest to Kessingers' property. Siegfried purchased Lots 4 through 9 in 1976 and West purchased Lot 3 in 1977. When purchased, both Siegfried and West's lots were undeveloped. However, both fenced, gated and posted their respective properties within two years of purchase. Siegfried did so in 1977-1978 and West did so by 1979. Both used a three-strand barbed-wire gate to block access to the road. In addition to his

3

gate, Siegfried erected an entry way to his property by placing a main cross beam atop two large timber poles on either side of the road. West, in addition to his gate, physically blocked the road with his pickup.

Siegfried built a home on his lots in 1979 and West built a home on his lot by 1980. Siegfried used his property mainly as a vacation residence, but did reside there permanently from 1989 to 1993. West lived on his property as a permanent resident from 1980 to 1985 and from 1987 to 1990. During their periods of occupancy, both Siegfried and West maintained their gates. Just as for the Kessingers now, the road was the only means for Siegfried and West to access their properties. Both Siegfried and West testified that they believed the road was private and that they erected and maintained the gates to keep the general public out. However, they both additionally testified that they did not object to their neighbors using the road to access the U.S. Forest Service and Plum Creek Timber Company land to the south of their properties.

Matuleviches first purchased a 10.35 acre parcel by Rogers Lake in 1973. Subsequently they purchased two lakeshore lots, one in 1974 and the other in 1983. During their vacations at Rogers Lake, Matuleviches used the road, as it crosses what is now Kessingers' property, to access U.S. Forest Service land and Plum Creek Timber Company land for recreational purposes. Matuleviches used the road for a variety of recreational purposes such as to walk, sightsee, occasionally gather firewood and cross country ski. Additionally, prior to 1984, Matuleviches used the road to access

4

a spring located on Plum Creek Timber Company property to gather drinking water in plastic jugs. However, in 1984, Matuleviches developed a deep well on their property and subsequently reduced their use of the spring for drinking water. Between 1973 and 1977, few other people lived in the same area as Matuleviches; consequently, no one objected to their use of the road. Matuleviches continued using the road after Siegfried and West purchased their lots and placed gates across the road, without objection from either owner.

Additional neighbors, John Winnie (Winnie) and Tom Beeson (Beeson), also used the road to access the U.S. Forest Service land and Plum Creek Timber Company land. Winnie purchased his property in 1973, while Beeson did not purchase his property until 1983. Like Matuleviches, Winnie and Beeson used the road for recreational purposes only. As seasonal residents, Winnie and Beeson used the road to do such things as walk, sightsee, cross country ski and collect water from the spring on Plum Creek Timber Company land. While they used the road despite Siegfried and West's gates, they testified that they honored the gates by leaving them as they found them.

Kessingers initiated this suit in the District Court for the Eleventh Judicial District, Flathead County. In a effort to secure legal access to their property, Kessingers brought a quiet title action alleging a private prescriptive easement over a road crossing the property of Matuleviches and Bear. Kessingers further sought an injunction to prevent Matuleviches or Bear from

5

interfering with Kessingers' right to use the road. Matuleviches counterclaimed alleging that they, or alternatively the public, had a prescriptive easement over the road as it crosses Kessingers' property. Bear similarly answered, but subsequently Bear and Kessingers resolved the issues between them by mutual settlement and the District Court dismissed the claims between them with prejudice.

Following a bench trial and view of the road in dispute, the District Court entered judgment awarding Kessingers a private prescriptive easement over the road as it crosses Matuleviches' property. Additionally, the District Court awarded Matuleviches and two nonparties, John Winnie and Tom Beeson, private prescriptive easements over the road as it crossed Kessingers' property. From that judgment, Kessingers appeal and Matuleviches cross appeal. We affirm in part and reverse in part.

Our standard of review for a district court's findings of fact is provided by Rule 52(a), M.R.Civ.P., which in part provides:

> Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses . . ..

We have adopted the following three-part test to interpret this rule:

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the

6

record leaves the court with the definite and firm conviction that a mistake has been committed."

Public Lands Access Ass'n, Inc. v. Boone and Crockett Club Found., Inc. (1993), 259 Mont. 279, 283, 856 P.2d 525, 527 (quoting Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

Our standard of review relating to a district court's conclusions of law is whether the tribunal's interpretation of the law is correct. Public Lands, 856 P.2d at 527.

A prescriptive easement is created by operation of law. Swandal Ranch Co. v. Hunt (Mont. 1996), 915 P.2d 840, 843, 53 St.Rep. 361, 362. When establishing either a public or private easement by prescription, the party claiming the prescriptive easement must show "open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period." Swandal, 915 P.2d at 843. The statutory period is five years. Section 70-19-404, MCA. The burden is on the party seeking to establish the prescriptive easement to prove all elements of the prescription. Public Lands, 856 P.2d at 527. To establish a prescriptive right, the prescriptive claimant must show, by clear and convincing evidence, that the use was adverse and not by permission of the landowner. Kostbade v. Metier (1967), 150 Mont. 139, 143, 432 P.2d 382, 385.

## DISCUSSION

1. Did the District Court err in declaring that a private prescriptive easement had been established over the road in question in favor of the Defendants Donald and Joan Matulevich?

7

Public Lands Access Ass'n, Inc. v. Boone and Crockett Club Found., Inc. (1993), 259 Mont. 279, 283, 856 P.2d 525, 527 (quoting Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

Our standard of review relating to a district court's conclusions of law is whether the tribunal's interpretation of the law is correct. Public Lands, 856 P.2d at 527.

A prescriptive easement is created by operation of law. Swandal Ranch Co. v. Hunt (Mont. 1996), 915 P.2d 840, 843, 53 St.Rep. 361, 362. When establishing either a public or private easement by prescription, the party claiming the prescriptive easement must show "open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period." Swandal, 915 P.2d at 843. The statutory period is five years. Section 70-19-404, MCA. The burden is on the party seeking to establish the prescriptive easement to prove all elements of the prescription. Public Lands, 856 P.2d at 527. To establish a prescriptive right, the prescriptive claimant must show, by clear and convincing evidence, that the use was adverse and not by permission of the landowner. Kostbade v. Metier (1967), 150 Mont. 139, 143, 432 P.2d 382, 385.

## DISCUSSION

1. Did the District Court err in declaring that a private prescriptive easement had been established over the road in question in favor of the Defendants Donald and Joan Matulevich?

7

Kessingers argue that the District Court's finding that Matuleviches had established a private prescriptive easement over the road in dispute as it crosses Kessingers' land was not supported by substantial evidence. Kessingers contend that Matuleviches' use of the road was not adverse, but rather based on permissive use. Further, Kessingers assert that the Matuleviches used the road only for access to recreational activities which could not give rise to a presumption of adverse use. Finally, Kessingers maintain that even if Matuleviches had established a private prescriptive easement prior to Siegfried and West purchasing their properties, Siegfried's and West's acts created reverse adverse possession and thereby destroyed any such easement. We agree.

The District Court stated in Finding of Fact No. 7 "[t]hat at no time during such use did [Matuleviches] ever seek permission for such use from either [Kessingers] or their predecessors in interest." The District Court then went on to state in Finding of Fact No. 8 that Matuleviches' use met all the requirements of a prescriptive easement, including that of adversity. We disagree. As a finding of fact, this is not supported by substantial evidence; as a conclusion of law, it is incorrect.

"To be adverse, the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in by, the owner of the land." Public Lands, 856 P. 2d at 527 (citation omitted). "If the

8

owner shows permissive use, no easement can be acquired since the theory of prescriptive easement is based on adverse use." Public Lands, 856 P. 2d at 527 (citation omitted).

"Neighborly accommodation is a form of permissive use which, by custom, does not require permission at every passing." Lemont Land Corp. v. Rogers (1994), 269 Mont. 180, 186, 887 P.2d 724, 728 (citing Public Lands, 856 P.2d at 528). We have stated that:

> A use of a neighbor's land based upon mere neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement. Thus where the use of a way by a neighbor was by express or implied permission of the owner, it was held that the continuous use of the way by the neighbor was not adverse and did not ripen into a prescriptive right.

Public Lands, 856 P.2d at 528 (quoting Wilson v. Chestnut (1974), 164 Mont. 484, 491, 525 P.2d 24, 27).

A property owner erecting a gate across a road located on his property provides strong evidence that use of the road past the gate is permissive only. We have stated that:

> The fact that the passage of a road has been for years barred by gates or other obstructions to be opened and closed by the parties passing over the land, has always been considered as strong evidence in support of a mere license to the public to pass over the designated way.

Public Lands, 856 P.2d at 528 (quoting Maynard v. Bara (1934), 96 Mont. 302, 307, 30 P.2d 93, 95).

Siegfried and West both testified that they gated, fenced and posted their properties during the years 1977 to 1979 and enforced their gates throughout their periods of ownership. They both testified that the purpose of the gates was to keep the general public out. Further, while they actively discouraged the general

public from using the road, they did not object to their neighbors' continued use of the road for access to recreational activities on U.S. Forest Service and Plum Creek Timber Company land to the south of their properties. Moreover, while Matuleviches testified that they continued to use the road after the gates were in place, they also testified that their use of the road was a "neighborly thing" and that any discussion concerning Siegfried's or West's explicit permission for them to use the road "just never came up."

Siegfried and West, by actively prohibiting the general public from using the road, but not objecting to their neighbors' use, gave Matuleviches implied permission to use the road as it crossed their properties. This implied permission, based on a general attitude of "neighborly accommodation" prevented Matuleviches' use of the road from ripening into a prescriptive easement.

The District Court in its Finding of Fact No. 6 states that Matuleviches used the road ". . . regularly under claim of right by foot, vehicle, recreational vehicle and cross country skis." Substantial evidence supports this finding of fact that Matuleviches' use of the road was for recreational purposes only and therefore could not, as a matter of law, raise the presumption of adverse use. Public Lands, 856 P.2d at 528-29.

Matuleviches testified that they were seasonal residents and used the road for recreational purposes. Prior to 1993, Matuleviches primarily walked along the road for a variety of recreational uses such as to hike, sightsee, occasionally gather firewood and cross country ski. Additionally, prior to 1984,

10

Matuleviches used the road to access a spring located on Plum Creek Timber Company property to gather drinking water in plastic jugs. However, in 1984, Matuleviches developed a deep well on their property and subsequently reduced their use of the spring for drinking water. Matuleviches' seasonal use of the road was only recreational. Recreational use is insufficient to raise a presumption of adverse use. Public Lands, 856 P.2d at 528-29. Therefore, Matuleviches did not establish a private prescriptive easement based on their recreational use of the road.

Finally, Kessingers maintain that even if Matuleviches had established a private prescriptive easement prior to Siegfried and West purchasing their properties, Siegfried's and West's acts of putting up gates and allowing Matuleviches to use the road based on permissive use destroyed such an easement. We also addressed this issue in Public Lands:

> Section 70-17-111(3), MCA, provides that a servitude is extinguished "...(3) by the performance of any act upon either tenement by the owner of the servitude or with his assent which is incompatible with its nature or exercise [.]" We have held, on the basis of that statute, that if a prescriptive easement exists, subsequent acts inconsistent with the claim by prescription, support the conclusion that the prescriptive easement has been extinguished.

Public Lands, 856 P.2d at 531-32 (citations omitted). We further explained that the right hostile to the easement holder must be brought to the easement holder's attention and the hostile use must continue for the full statutory period. Public Lands, 856 P.2d at 531. Based on the foregoing, we held that the defendants' predecessors-in-interest had established reverse adverse

11

possession. They performed a hostile act by blocking off the disputed road, and the purported owner of the easement, the public, adhered to a walk-in policy over a 17-year period. Consequently, any prescriptive easement the public may have established was lost. Public Lands, 856 P.2d at 532.

Similarly, Siegfried and West demonstrated hostile acts which were inconsistent with Matuleviches' purported prescriptive easement. During the years 1977 to 1979, Siegfried and West gated, posted and fenced their properties. They enforced their gates to keep the general public out, but allowed Matuleviches access to the road based on neighborly accommodation. Matuleviches testified that they recognized the use of the road as a "neighborly thing." For a period of over ten years, Siegfried and West allowed Matuleviches to use the road. Just as in Public Lands, Siegfried's and West's acts created reverse adverse possession. Therefore, any prescriptive easement Matuleviches may have established was lost.

We conclude that Matuleviches failed to establish a private prescriptive easement over the road as it crosses Kessingers' property. Therefore, we reverse that part of the District Court's judgment and order that grants a private prescriptive easement to Matuleviches.

2. **Did the District Court err in declaring that a private prescriptive easement had been established over the road in question by two nonparties and their successors in interest?**

The District Court awarded private prescriptive easements over the disputed road to two nonparty witnesses, John Winnie and Tom

12

Beeson, and their successors-in-interest. Kessingers assert that the District Court erred in granting a private prescriptive easement to Winnie and Beeson because they were not parties to this lawsuit. Kessingers argue § 25-9-201, MCA, allows a court to adjudicate only those rights between plaintiffs and defendants. Matuleviches argue that Winnie and Beeson, as members of the public, testified to help prove that a public prescriptive easement existed over Rogers Lane. Further, Matuleviches argue that based on Winnie's and Beeson's testimony the District Court could have decided to grant a public prescriptive easement, but simply "chose to restrict the 'public easement' to certain specified members of the public."

We recently decided this issue in Warnack v. Coneen Family Trust (1994), 266 Mont. 203, 879 P.2d 715. A person who is not a party to the action, cannot be a party to the judgment. Warnack, 879 P.2d at 718. In Warnack, we explained:

> [I]t is a fundamental principle of our jurisprudence that it is only against a party to the action that a judgment can be taken and that the judgment is not binding against a stranger to the action.

Warnack, 879 P.2d at 718 (citation omitted). This rule also applies to judgments awarded in favor of a nonparty. Warnack, 879 P.2d at 718. Furthermore, this fundamental principle underlays the language set forth in § 25-9-201, MCA:

> **Whose rights determined in judgment.** Subject to the provisions of Rule 54(b) M.R.Civ.P., judgment may be given for or against one or more of several plaintiffs and for or against one or more of several defendants, and it may, when the justice of the case requires, determine the ultimate rights of the parties on each side as between themselves.

13

Although Winnie and Beeson lived in the area of the disputed road and did testify as to their use of the road, they were not parties to this lawsuit. Accordingly, we reverse that part of the District Court's judgment and order that grants a private prescriptive easement to John Winnie and Tom Beeson.

3. **Did the District Court err in finding that the general public had not used the road in question sufficiently to ripen into a public prescriptive easement?**

On cross appeal, Matuleviches argue that the public has a prescriptive easement right to use the road. Matuleviches contend that they, like Winnie and Beeson, are members of the public. Therefore, as members of the public, they have collectively used the road for twenty years in the same manner and thereby have established a public prescriptive easement over the road. We disagree.

In Issue 1, we held that Matuleviches failed to establish a private prescriptive easement because they used the road for recreational purposes based only on neighborly accommodation. Prescriptive easements may be proved by public or private use. However, in either case, the claimant must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement for the full statutory period. Granite County v. Komberec (1990), 245 Mont. 252, 257, 800 P.2d 166, 169 (overruled on other grounds). Therefore, just as the evidence of Matuleviches' use of the road was not sufficient to establish a private prescriptive easement, this same evidence is not sufficient to establish a

14

public prescriptive easement. Matuleviches used the road for recreational purposes based on neighborly accommodation. This kind of use will not establish a prescriptive easement.

Moreover, Matuleviches' actions support a conclusion that they did not view the road as public, but rather that they also viewed the road as private. Matuleviches placed a "Private Road" sign along the road and indicated through their conduct that they felt the road was private and not open to the public. For example, Matuleviches did not sign a petition circulated in 1985-86 submitted to the Flathead County Commissioners to open the road as a county road. Matuleviches' use and conduct concerning the road does not support a conclusion that the road is public, but rather that it is private.

In Issue 2, we held that Winnie and Beeson could not be granted a private prescriptive easement because they were not parties to this action. However, because Winnie and Beeson testified under Matuleviches' claim that a public prescriptive easement existed, we will consider whether their use of the road contributed to the establishment of a public prescriptive easement.

Our holding and discussion in Public Lands is again directly on point. In Public Lands, plaintiffs asserted a public prescriptive easement over Dupuyer Canyon Road. However, we found that plaintiffs' use of the road was not adverse, but instead due to neighborly accommodation. Public Lands, 856 P.2d at 528. We based this decision on the fact that defendant had erected gates across the disputed road and plaintiffs and other members of the

15

public honored them by leaving the gates as they had found them. Public Lands, 856 P.2d at 528. Similarly, Winnie and Beeson honored the gates erected by Siegfried and West. When Winnie and Beeson traveled past the gates, they left them as they found them. That is, if the gate was closed when they came upon it, they would close it after passing through.

Furthermore, in Public Lands, we found that plaintiffs used the road only to gain access to recreational activities and that type of use failed to raise a presumption of adverse use. Public Lands, 856 P.2d at 528-29. Likewise, Winnie and Beeson used the road solely for recreational purposes such as walking, sightseeing, cross country skiing and collecting water from the spring on Plum Creek Timber Company land. This recreational use of the road could never establish adverse use. Consequently, the testimony of Winnie and Beeson did not demonstrate the establishment of a public prescriptive easement.

Matuleviches, Winnie and Beeson all used the road for recreational purposes with the implied permission of both Siegfried and West. Therefore, their combined use of the road was not adverse and, consequently, they failed to establish a public prescriptive easement. Accordingly, we affirm that part of the District Court's judgment and order declaring that the general public did not establish a public prescriptive easement over the disputed road.

16

4. **Did the District Court err in declaring that a private prescriptive easement had been established over the road in question in favor of the Plaintiffs Roger and Joanne Kessinger?**

On cross appeal, Matuleviches argue that if Matuleviches, Winnie and Beeson do not have a private prescriptive right to use the road, then Kessingers do not have a private prescriptive right either. Instead, Matuleviches assert that they had given Kessingers permission to use the road to access Kessingers' property. We find this argument unpersuasive.

On appeal, Matuleviches bear the burden of establishing that the judgment of the District Court is erroneous. Walsh v. Ellingson Agency (1980), 188 Mont. 367, 373, 613 P.2d 1381, 1384. While Matuleviches assert that Kessingers' use of the road was permissive, they fail to establish that the District Court's findings in this regard are not supported by substantial evidence or are otherwise clearly erroneous; nor do they establish error by the District Court in interpreting the law. We will not presume error on the part of the District Court. Walsh, 613 P.2d at 1384. Accordingly, we affirm that part of the District Court's judgment and order declaring that Kessingers are entitled to a private prescriptive easement over the road as it crosses Matuleviches' property for the purposes of ingress and egress.

We affirm in part and reverse in part.

_____
Justice

17

We Concur:

_J. A. Turnage_
Chief Justice

_Karla M. Gray_

_William E. Hunt_

_Fred J. Weber_
Justices

18



U.S. FOREST SERVICE AND PLUM CREEK
TIMBER COMPANY LAND ARE NOT
SPECIFICALLY DESIGNATED ON THIS MAP.

APPENDIX A

October 22, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Thomas R. Bostock
Warden, Christiansen, Johnson & Berg
P.O. Box 3038
Kalispell, MT 59903-3038

Kenneth E. O'Brien
Hash, O'Biren & Bartlett
P.O. Box 1178
Kalispell, MT 59903-1178

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy