JUSTICE McKINNON,
dissenting.
¶32 In my view, the Court departs from our precedents under which we have found, on similar facts, that “neighborly accommodation” defeats a claim of adverse use. I believe we err, as did the District Court, in determining that a private prescriptive easement was created before Lyndes purchased his ranch in 1995. After a careful review of the trial testimony, the evidence supports only one finding: that the Hertzlers’ use was permissive and by neighborly accommodation. I dissent from the Court’s contrary holding.
¶33 “ ‘The mere use of a way for the required time is generally not sufficient to give rise to the presumption of a grant, and generally some circumstances or act, in addition to the use, tending to indicate that the use was not merely permissive, is required."[1] Wilson v. Chestnut, 164 Mont. 484, 490, 525 P.2d 24, 27 (1974) (quoting Thompson on Real Property (Easements) vol. 2, § 345 (1961 Replacement)); accord Heller v. Gremaux, 2002 MT 199, ¶ 14, 311 *520 Mont. 178, 53 P.3d 1259; see also Leisz v. Avista Corp., 2007 MT 347, ¶ 16, 340 Mont. 294, 174 P.3d 481 (unexplained use of land cannot form a basis for a claim of prescriptive right). A use of a neighbor’s land based on mere neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement. Wilson, 164 Mont. at 491, 525 P.2d at 27. Thus, “ ‘where the use of a way by a neighbor was by express or implied permission of the owner, it was held that the continuous use of the way by the neighbor was not adverse and did not ripen into a prescriptive right.’ ” Wilson, 164 Mont. at 491, 525 P.2d at 27 (emphasis added) (quoting Thompson on Real Property (Easements) § 345); accord Pub. Lands Access Assn. v. Boone & Crockett Club Found., Inc., 259 Mont. 279, 284, 856 P.2d 525, 528 (1993); see also Larsen v. Richardson, 2011 MT 195, ¶ 59, 361 Mont. 344, 260 P.3d 103 (noting that neighborly accommodation is a form of permissive use that may be “express or implied”).
¶34 We have acknowledged Montana’s custom and heritage which began in the homesteading days and allowed one neighbor to cross the land of another neighbor as a matter of general understanding between landowners. In Rathbun v. Robson, 203 Mont. 319, 322, 661 P.2d 850, 852 (1983), we observed:
Severed witnesses testified concerning local customs that began in the homesteading days concerning access across another’s land. There existed an understanding among landowners that permission was not required every time a person needed to cross his neighbor’s land. Permission was automatic if the individual closed the gates and respected his neighbor’s property.
Evidence of this local custom, without more, is sufficient to establish that the use was permissive. See Taylor v. Petranek, 173 Mont. 433, 438, 568 P.2d 120, 123 (1977) (“[T]he homesteaders who initially lived in the area developed common practice of allowing others to cross their lands to reach Suffolk. This evidence is sufficient to support a use permissive in its inception and not under a claim of right.”), overruled on other grounds, Warnack v. Coneen Fam. Trust, 266 Mont. 203, 216, 879 P.2d 715, 723 (1994); Ewan v. Stenberg, 168 Mont. 63, 67, 541 P.2d 60, 63 (1975) (“[F]rom the beginning the Plaintiffs’ usage of the trail and the later bulldozed road was a matter of neighborly cooperation between friendly ranchers. Consequently, it was a permissive use and has remained so until the Plaintiffs defiance of Stenberg’s barricade in 1972, which is not a sufficient length of time to ripen into a prescriptive right.” (internal quotation marks omitted)).
¶35 In Amerimont, Inc. v. Gannett, 278 Mont. 314, 324, 924 P.2d 1326, 1333 (1996), we explained that a prescriptive easement cannot be *521 established where the use was “a mere privilege” pursuant to the permission and neighborly accommodation extended by the landowner. We held:
Amerimont and its predecessors had the privileged use of the roadway pursuant to the permission and neighborly accommodation extended by Gannett and his predecessors. Residents of the area routinely helped each other with farm and ranch work and the parties and their predecessors understood that this custom and practice included the ability to cross one another’s property without having to ask for permission each time, as long as the neighbors had business to attend to, did not abuse recreational privileges, and closed all gates after each passage. The roadway was used by the express or implied permission of the landowner and as a neighborly accommodation to surrounding landowners. Amerimont’s and its predecessors’ use of the road across the Gannett property was not adverse.
Amerimont, 278 Mont. at 324-25, 924 P.2d at 1333-34.
¶36 If a use begins as a permissive use, it is presumed to continue as such, and periodic express grants of permission are not required to maintain the permissive character of the use, especially where the use remains essentially the same. Larsen, ¶ 59 (citing Rettig v. Kallevig, 282 Mont. 189, 196, 936 P.2d 807, 811 (1997), and Rathbun, 203 Mont. at 322-24, 661 P.2d at 852); see also Heller, ¶ 14 (“In determining whether the use of a road was adverse, we have stated that ‘neighborly accommodation’ is a form of permissive use which, ‘by custom, does not require permission at every passing.’ ” (citing Kessinger v. Matulevich, 278 Mont. 450, 457, 925 P.2d 864, 868 (1996), and Lemont Land Corp. v. Rogers, 269 Mont. 180, 186, 887 P.2d 724, 728 (1994)). Accordingly, “ ‘[i]f the user begem by the permission of the owner, it will not ripen into an adverse or hostile right until notice of such adverse user is brought home to the owner and the user continued thereafter for the statutory period.’ ” Wilson, 164 Mont. at 491, 525 P.2d at 27 (quoting Thompson on Real Property (Easements) § 345); see also Taylor, 173 Mont. at 438, 568 P.2d at 123 (“Although a use permissive in its inception may ripen into a prescriptive right, it cannot do so unless there is a later distinct and positive assertion of a right hostile to the owner, which must be brought to the attention of the owner, and the use continued for the full prescriptive period.”); Medhus v. Dutter, 184 Mont. 437, 443, 603 P.2d 669, 672 (1979) (“Since the use of the road was permissive at its inception, to find a prescriptive easement here we must find in the record a distinct and positive assertion of a right to use the disputed road hostile to the owners by those claiming the *522 easement. The record must also show the right was brought to the attention of the owners and continued use of the easement for the full statutory period.”).
¶37 The Court affirms the District Court’s ruling that a private prescriptive easement had been established by the time Lyndes purchased the property in 1995. We state:
The un-refuted testimony was that Hertzlers used the Section 27 road openly and notoriously for over forty years. While other landowners, including Lyndes’s predecessors in ownership, acquiesced in Hertzler’s [sic] right to use the road, they never granted any permission nor did Hertzlers ever seek permission to cross Section 27 to access their property.
Opinion, ¶ 12. These determinations, however, are consistent with a longstanding custom of permissive use by neighborly accommodation and do not support a finding of adverse use. Neighborly accommodation is “open and notorious,” and permission is not required at every passing but, rather, is presumed. Therefore, our conclusions of law, as well as those of the District Court, are incorrect.
¶38 Here, the record was not silent on whether the custom in the area was one of neighborly accommodation. To the contrary, it showed that use of the trail was by accommodation or permission. The record is replete with testimony from witnesses for both Lyndes and the Hertzlers that use by neighborly accommodation went as far back as the homesteading days. Nothing in the record could establish a determination other than that the use of the trail was through neighborly accommodation. In fact, Cynthia Green (one of the defendants claiming a prescriptive easement over Lyndes’s property) testified to the following during cross-examination:
Q. In order to get to Sections 22 and 23 using your normal route, you do have to cross private property. Is that right?
A. Yes.
Q. It’s about fourteen miles from your home place to Section 22. Is that about right?
A. I suppose that’s an approximation.
Q. And one of the property owners whose land you would have to cross would be the Keller property.
A. That’s correct.
Q. And the Kellers have never told you that you couldn’t use their property, have they?
A. No, they have not.
Q. You just assume that it’s okay.
A. They’ve never told us we couldn’t.
*523 Q. It’s just them being neighborly.
A. I guess.
Q. Now, you don’t contact the Kellers before you cross their property, do you?
A. No.
Q. Because they don’t require you to do that.
A. That’s right.
Q. And you’d agree that they know you cross their property.
A. Yes.
Q. But they don’t prevent that, because they allow you to do it.
A. Yes, they do.
Q. And that’s the way things have always been.
A. They allow me to cross.
Q. And that’s the way things have always been.
A. In our recollection, yes.
¶39 The witnesses consistently testified that ranchers crossed each other’s property for years and that people did not ask permission to use the trail. It was well known that permission was not required prior to using the trail. One witness, Gregory Keller, testified that use of the trails was the neighborly thing to do and that “we figure [the Hertzlers] need to get to their properly. And in the older days, thirty, forty years ago, you just let people do that.” Mr. Keller testified, however, that this was a “personal” right as opposed to a right that was legal or “judge decreed.” Sonny Todd, who grew up on Work Creek, testified that asking for permission “just wasn’t something that was done” and that “we went back and forth through each other’s land” because it “was just the neighborly thing to do.” Significantly, no witness testified to any custom or understanding except that usage of the trail was through neighborly accommodation.
¶40 In addition to local custom, there was other evidence to show that use of the trail began and remained permissive. There were several instances of control exercised by Lyndes. Although it is not clear from the District Court’s findings whether the trail had a gate and lock prior to Lyndes’s ownership, the District Court found that Lyndes began locking the gate by 1995. Only after Ray Hertzler telephoned Lyndes in 1999 asking for permission to use the trail did Lyndes grant permission to the Hertzlers by placing a key under a rock to gain access through the locked gate. We have held: “ The fact that the passage of a road has been for years barred by gates or other obstructions to be opened and closed by the parties passing over the land, has always been considered as strong evidence in support of a *524 mere license to the public to pass over the designated way.’ ” Pub. Lands Access Assn., 259 Mont. at 285, 856 P.2d at 528 (quoting Maynard v. Bara, 96 Mont. 302, 307, 30 P.2d 93, 95 (1934)).
¶41 The evidence in this case of neighborly accommodation and permissive use is compelling, but not surprising given Montana’s heritage. In contrast, there is insufficient evidence to support adverse use during the period the Court finds a prescriptive easement was created — i.e., between 1973 and 1995, before Lyndes purchased the property. Merely asserting, decades later, that the use has been “under a claim of right,” without any circumstances or act which would provide notice of the adversity, is insufficient to overcome the extensive evidence of neighborly accommodation. All elements to establish a prescriptive easement must be proved “because one who has legal title should not be forced to give up what is rightfully his without the opportunity to know that his title is in jeopardy and that he can fight for it.” Pub. Lands Access Assn., 259 Mont. at 283, 856 P.2d at 527 (internal quotation marks omitted). The burden at trial was on the Hertzlers to establish, by clear and convincing evidence, all elements of a prescriptive easement. Kessinger, 278 Mont. at 456, 925 P.2d at 868. Because evidence of permissive use defeats a claim of prescriptive easement absent some circumstances or act, besides use, indicating that the use was not merely permissive, Heller, ¶ 14, the Hertzlers’ claim necessarily fails.
¶42 In my opinion, the Court has committed the same error as did the District Court. First, there is not clear and convincing evidence of adverse use. The Court relies merely on conclusory and self-serving assertions by the Hertzlers that passage was pursuant to a “claim of right.” Second, the conclusions of law drawn by this Court and the District Court are incorrect and contrary to our precedent. The evidence in the record supports only one finding: that use of the trail was by neighborly accommodation and, accordingly, permission was not required at every passage. The fact that permission was not sought by the Hertzlers or other users is not a fact which supports adverse use when the record clearly establishes neighborly accommodation. The Court and the District Court misapprehended the effect of this evidence and have drawn conclusions inconsistent with our caselaw. The Court departs from established precedents finding, on similar facts, that “neighborly accommodation” does not establish adverse use.
¶43 As a final observation, I believe today’s decision confuses our law of prescriptive easements and only encourages greater friction between neighboring landowners. While the Court states that landowners “should be commended for exhibiting cooperation rather than *525 confrontation,” Opinion, ¶ 22, the Court then turns around and punishes the alleged servient landowner here by finding a prescriptive easement over his property. The end result of today’s Opinion is that “cooperation” and neighborly accommodation by a landowner can later be used to dispossess that landowner of his property rights, where the beneficiary of the landowner’s grace claims that the use has always been adverse and under a “claim of right.”
¶44 I dissent.

 The original theory underlying prescriptive easements was that “[i]f a particular use had long existed, it was presumed that a grant authorizing such use had been made, but that the grant itself had been lost.” Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land § 5:1, 5-8 (Thomson Reuters 2013); accord Ferguson v. Standley, 89 Mont. 489, 500, 300 P. 245, 250 (1931) (“prescription is founded upon the supposition of a grant”). Courts generally have abandoned the presumption-of-a-grant theory in favor of the philosophy that a diligent user should be rewarded at the expense of a careless landowner. Nevertheless, terminology such as “the presumption of a grant” still remains in the caselaw of prescriptive easements. Bruce & Ely, The Law ofEasements and Licenses in Land § 5:1,5-5,5-9 to 5-10. There is a separate presumption that if the claimant shows open, notorious, exclusive, continuous, and uninterrupted use, then it is presumed that the use was also adverse, and the burden shifts to the landowner to show that the use was permissive. Opinion, ¶ 17; Larsen v. Richardson, 2011 MT 195, ¶ 57, 361 Mont. 344, 260 P.3d 103. In the present case, the primary issue is whether Lyndes showed that the Hertzlers’ use was permissive. As discussed below, I conclude that he did.